VOYAGER VILLAGE LIMITED, D.B.A. SPRING VALLEY MOBILE HOME PARK, APPELLEE, *v.* WILLIAMS, APPELLANT.

(No. 81-18—Decided January 14, 1982.)

*Messrs. Goldman, Fox, Rubin & Shapiro* and *Mr. Joel S. Shapiro,* for appellee.

*Mr. C. Douglas Mort* and *Rural Legal Aid Society of West Central Ohio,* for appellant.

BROGAN, J. This case comes before this court pursuant to an appeal from a judgment of the Xenia Municipal Court in case No. X80-CV-954.

It is the second action by Voyager Village Limited, doing business as Spring Valley Mobile Home Park, plaintiff-appellee, to recover restitution of the premises, plus a money judgment, from Frank Williams, defendant-appellant.

Frank Williams, his wife, Sharon Williams, and their two children have lived in a house trailer in the Spring Valley Mobile Home Park (hereinafter referred to as SVMHP) since approximately May 1974. Mr. Williams owns the house trailer in which he lives; and he leases the lot on which the trailer is parked on an oral, month-to-month-tenancy basis from SVMHP.

Since August 15, 1979, the trailer park has been managed by Burris Calkins and his wife, Fannie Calkins, who represent themselves as agents of the corporation and managers of SVMHP. Voyager Village Limited purchased what is now known as SVMHP from the previous owner on August 1, 1979.

In March 1980, Mr. and Mrs. Williams, in cooperation with other SVMHP residents, formed the Spring Valley Tenants' Association (hereinafter referred to as SVTA) to collectively negotiate with the park managers and SVMHP regarding terms and conditions of residency at SVMHP. Additionally, Mr. and Mrs. Williams sought relief from improper water drainage conditions which were known to exist at SVMHP. The Williamses were alarmed at the damage to their trailer caused by poor water drainage and justifiably believed that SVMHP may have been operated in violation of applicable safety and health codes. Mr. Williams complained of the water problem in April 1980 to the Greene County Metropolitan Housing Authority and the Xenia Area Housing Coordinator, Linda Murack. In May 1980, Linda Murack contacted the Greene County Health Department and requested an investigation of the water drainage conditions at SVMHP.

On July 30, 1980, within two months of Linda Murack's request for an investigation, Mrs. Fannie Calkins served Mrs. Williams with a notice of termination of tenancy. Subsequently, Voyager Village Limited filed the first action in forcible entry and detainer against Mr.

Williams in the Xenia Municipal Court, case No. X80-CV-780. This lawsuit was voluntarily dismissed by Voyager Village Limited; however, the park managers refused to accept rent tendered by Mr. Williams.

On October 16, 1980, Mrs. Fannie Calkins served Mrs. Williams with a notice to leave the premises on or before November 16, 1980. On November 18, 1980, Voyager Village Limited filed a complaint demanding, among other things, restitution of the premises, this action being case No. X80-CV-954 in the Xenia Municipal Court.

At trial, counsel for Mr. Williams argued that the October 16, 1980 notice was wholly inadequate and attempted to introduce evidence regarding the issue of retaliatory eviction. Acting Judge Nicholas Carrera rejected the former contention and refused to admit evidence regarding the latter contention, over counsel's objections.

In the Decision and Entry of January 23, 1981, the court granted Voyager Village Limited restitution of the premises, plus the sum of $225 for rent for the months of September, October and November 1980, plus $2.50 per day for rent from December 1, 1980 until the Williamses' actual departure.

Subsequently, Mr. Williams filed his notice of appeal, order for transcript, and motion for stay of execution. The matter is now before this court for a determination of the requirements and impact of Ohio's landlord-tenant and eviction law, as these subjects relate to the cause herein.

I

Appellant's first assignment of error is:

"The court below erred in overruling defendant-appellant's motion to dismiss, which was based on the grounds that appellee had not provided defendant with requisite notice of the action in forcible entry and detainer and that the court

below therefore had no jurisdiction over the case."

In general, a park operator desiring to file a complaint in forcible entry and detainer against a tenant of residential premises must first serve both a notice of termination of tenancy and notice under R.C. 1923.04(A) upon the tenant before he files his complaint. In the cause below, Mr. Williams contended that he did not receive proper notice of termination of tenancy or notice under R.C. 1923.04(A) and that lack of service of either notice required dismissal of the action below.

R.C. Chapter 1923 provides the relevant statutory material for bringing actions in forcible entry and detainer. R.C. 1923.01, relative to jurisdiction in forcible entry and detainer, reads, in part, as follows:

"(B)  As used in this chapter:

"(1)  'Tenant' means a person entitled under a rental agreement to the use or occupancy of premises to the exclusion of others.

"(2)  'Landlord' means the owner, lessor, or sublessor of premises, his agent, or any person authorized by him to manage the premises or to receive rent from a tenant under a rental agreement, *except, if required by the facts of the action to which the term is applied, 'landlord' means a park operator.*

"(3)  'Park operator' and 'house-trailer' have the same meaning as in section 3733.01 of the Revised Code.

"(4)  'Residential premises' has the same meaning as in section 5321.01 of the Revised Code, *except, if required by the facts of the action to which the term is applied, 'residential premises' has the same meaning as in section 3733.01 of the Revised Code.*" (Emphasis added.)

Further definitions are provided in R.C. 3733.01:

"(K)  'Park operator' means a house trailer park operator licensed under Chapter 3733 of the Revised Code.

"(L)  'Residential premises' means a lot located within a house trailer park and the grounds, areas, and facilities contained within the house trailer park for the use of tenants generally or the use of which is promised to a tenant."

Thus far, it is clear from the statutory definitions that, for purposes of R.C. Chapter 1923, Mr. Williams is a "tenant" renting "residential premises" (house trailer pad) from Voyager Village Limited, a "park operator."

Turning now from the statutory definitions to the procedural terms in forcible entry and detainer, R.C. 1923.04 provides, in relevant part:

"(A)  Except as provided in division (B) of this section, a party desiring to commence an action under this chapter, shall notify the adverse party to leave the premises, for the possession of which action is about to be brought, three or more days before beginning the action, by certified mail, return receipt requested, or by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode or at the premises from which the defendant is sought to be evicted."

The R.C. 1923.04(A) three-day notice to leave is a statutory prerequisite to filing an action in forcible entry and detainer. And, the thirty-day notice of termination of tenancy (which must be distinguished from the three-day, R.C. 1923.04[A] notice) is the established prerequisite to serving the notice under R.C. 1923.04(A).

In the case at bar, counsel for Voyager Village Limited asserted at the hearing that, "for reasons known only to the plaintiff in this action, * * * there is a desire to terminate the tenancy of the defendant and * * * [this has been done] by giving the appropriate thirty-day notice as required by Ohio statutes. * * *" Voyager Village Limited, however, never asserted at trial that Mr. Williams had been served with the R.C. 1923.04(A) three-day notice, a jurisdictional prerequisite to his cause; however, it did introduce a notice to leave the premises

form as an exhibit. Exactly what did Sharon Williams, wife of the appellant, receive from Fannie Calkins on October 16, 1980? Mrs. Williams received a pre-printed form, for R.C. 1923.04, dated October 16, 1980, requesting that Mr. Williams leave the premises by November 16, 1980. Mr. Williams argues that Voyager Village Limited attempted to simultaneously serve notice of termination of tenancy and the R.C. 1923.04(A), three-day notice with only one notice. From Ohio case law and statutory interpretation, this attempted "hybrid" notice is clearly insufficient at law.

Two recent Ohio cases, *Ewert* v. *Basinger* (Toledo M.C. 1978), 59 Ohio Misc. 43 [11 O.O.3d 171], and *Siegler* v. *Batdorff* (1979), 63 Ohio App. 2d 76 [17 O.O.3d 260], clearly delineate the three separate jurisdictional steps for bringing an action in forcible entry and detainer. These three steps are: (1) service upon defendant of proper notice of termination of tenancy under R.C. 5321.17(B); (2) service upon defendant of a proper R.C. 1923.04(A) three-day notice; and (3) filing by plaintiff of a complaint in forcible entry and detainer.

In *Ewert* v. *Basinger, supra,* a case very similar to the facts at bar, the Toledo Municipal Court dismissed plaintiff-owner's complaint in forcible entry and detainer for failure to serve the R.C. 1923.04(A) three-day notice upon the defendant-tenant. Defendant, who resided at the plaintiff's premises under an oral month-to-month tenancy, had made complaints to the Toledo Health Department, Division of Housing, about conditions of the residential premises. (The Division of Housing inspected the premises and issued an order for the plaintiff to make certain repairs to the premises. It was determined that compliance with the order would require remodeling the unit and deprive tenant of the use of the premises. On September 27, 1978, plaintiff hand-delivered to the defendant a thirty-day notice to vacate

the premises. On October 31, 1978, plaintiff filed the complaint.

In dismissing plaintiff's complaint, the court in *Ewert* v. *Basinger, supra,* at page 44, made the following observations:

"(5) An action in forcible entry and detainer under R.C. 1923.02 *must be begun* by service on the defendant of the three-day notice required in R.C. 1923.04, which *notice is a necessary part of the commencement of that action.*

"(6) Plaintiff *may not begin* his action in forcible entry and detainer, *by service of the three-day notice* required in R.C. 1923.04, *until the expiration of the thirty-day period* provided for in the notice delivered by plaintiff to defendant on September 27, 1978.

"(7) The hand *delivery* by plaintiff to defendant on September 27, 1978, *of the thirty-day notice to vacate* the premises *does not constitute notice under R.C. 1923.04.*

"(8) The *plaintiff has failed to serve notice* on the defendant as required by R.C. 1923.04." (Emphasis added.)

The court thereupon dismissed the plaintiff's complaint.

For the same reasons given for dismissal of the plaintiff's complaint in *Ewert,* appellant herein, Mr. Williams, argues that the court below should have dismissed Voyager Village Limited's complaint and erred in not doing so. Voyager Village Limited's service upon Mr. Williams of a thirty-day notice of termination of tenancy could not simultaneously satisfy the requirements of R.C. 1923.04(A) and 5321.17(B). Thus, appellant argues that without service of the R.C. 1923.04(A) three-day notice upon him prior to filing the complaint, Voyager Village Limited did not even invoke the jurisdiction of the Xenia Municipal Court; and, the court should have dismissed Voyager Village Limited's complaint.

The above statement of procedural rules controlling forcible entry and detainer actions is further amplified in the *Siegler* case. In the *Siegler* case, the plain-

tiff was the owner and landlord of residential premises which had been declared a nuisance and ordered demolished by the local building commissioner. The plaintiff brought separate actions in forcible entry and detainer against the defendants, who resided at the condemned premises on month-to-month tenancies. At trial, defendants disputed service of notices to terminate tenancy and to leave under R.C. 1923.04, but judgment was granted to plaintiff based on supporting affidavits establishing service of the notices. On appeal, the Court of Appeals for Cuyahoga County reiterated the importance of proper service of the two distinct notices in the following statement in its opinion:

"* * * In a landlord-tenant situation the provisions of R.C. Chapter 1923 must be read in light of R.C. Chapter 5321, which governs the rights and obligations of landlords and tenants. These code sections set out a three-step process which must be followed by a landlord before a court will order a tenant to vacate the premises. The three steps are: (1) a notice of termination of tenancy (R.C. 5321.17); (2) *a notice to vacate the premises* (R.C. 1923.04); and (3) a complaint in forcible entry and detainer. In the present case the tenancy was from month to month. Consequently, the notice of termination had to be given at least 30 days prior to termination. R.C. 5321.17(B). Thus, when a tenant is living by a month-to-month tenancy, a minimum of 33 days must be allowed before the landlord may initiate proceedings for ejectment." *Siegler* v. *Batdorff, supra,* at pages 82-83. (Emphasis added.)

Ohio case law has clearly demonstrated the importance of proper service upon the defendant of the R.C. 1923.04(A), three-day notice in a forcible entry and detainer action. Service of this notice is obviously mandatory from reading the statute and the appropriate case law. Mr. Williams argues the court below should have dismissed plaintiff's complaint for failure to serve the R.C. 1923.04(A) notice, and erred by not doing so.

At trial, Mr. Williams also disputed service of notice of termination of tenancy on the grounds that the October 16, 1980 notice was not served at the proper time. R.C. 5321.17(B) provides:

"The landlord or the tenant may terminate or fail to renew a month-to-month tenancy by notice given the other at least thirty days prior to the periodic rental date."

The court below found that for purposes of this issue, the periodic rental date was November 1, 1980. Mr. Williams would have had the trial court hold that Voyager Village Limited's termination of tenancy should have been served by October 1, 1980, and that service of the notice on October 16, 1980 was insufficient for purposes of the suit. Mr. Williams contends the trial court erred in finding that the October 16, 1980 notice was adequate under R.C. 5321.17(B) to terminate the tenancy, under any interpretation, as only fifteen days, rather than thirty days, passed between October 16, 1980 and November 1, 1980. The trial court stated that at least thirty days had passed before the filing of the complaint; however, computation of time for termination of tenancy is based on the periodic rental date, not the filing of a complaint.

Voyager Village Limited asserted at trial that it was entitled to restitution of the premises on the grounds that Mr. Williams was holding over term. Mr. Williams contends that this was not a case of non-payment of rent, nor had he violated any applicable health or safety codes. In addition, Mr. Williams contends that if he was holding over term on November 18, 1980 (the date of the filing of the complaint), then Voyager Village Limited should have been required to establish that he had proper notice of termination of tenancy at least thirty days prior to November 1, 1980, the periodic

rental date. Beyond that, Mr. Williams argues that Voyager Village Limited should have been required, at trial, to establish that he was served with proper R.C. 1923.04(A) notice at least three days prior to November 18, 1980.

However, Voyager Village Limited contends that it originally notified Mr. Williams of its intention to terminate the lease on July 30, 1980, and that this notice complied with the requirements of R.C. 5321.17(B) to give thirty-days notice in advance of the periodic rental date of September 1, 1980. Voyager Village Limited, thus, refers the court to Exhibit A of Mr. Williams' motion to dismiss in case No. X80-CV-780 (the first eviction action). An examination of Exhibit A reveals that it is a Notice of Termination which meets the requirements of R.C. 5321.17(B). Voyager Village Limited further contends that this exhibit was marked a court exhibit and introduced in the matter herein.

An examination of the transcript of proceedings indicates that the court admitted into evidence a court exhibit which was a notice to leave the premises dated July 30th. However, an examination of the appellate record indicates that the Clerk of Courts for the Court of Common Pleas of Greene County did not certify said exhibit as a part of the record.

A review of the record indicates the following:

"Q. Miss Murack [the Xenia Area Housing Coordinator], to the best of your knowledge, do you remember whether or not Mr. Williams received a notice to leave the premises prior to the one he received on October 16?

"A. Yes.

"Q. And do you remember approximately the date that was?

"A. No. I don't have a date.

"THE COURT: Counsel, do you have that notice?

"MR. SHAPIRO [counsel for plaintiff]: Yes. July 30.

"THE COURT: The Court is taking that as a Court's Exhibit; and mark it, please. It's admitted into evidence.

"*Mr. Mort* [counsel for defendant], *why would that then not defeat the section that you quoted which requires thirty days? That would be far more than thirty days.*

"MR. MORT: *We're not. I'm sorry, your Honor. If I may correct myself. We're not.* [Emphasis added.]

"THE COURT: Section 5321.17, section B, which you cited to me.

"MR. MORT: The Court's question to the plaintiff is whether she had knowledge of any retaliatory action prior.

"THE COURT: Yes, I want it in the record. You brought it up, and it says July they received notice to leave the premises.

"MR. MORT: That was on a previous case. We were in here once before on another eviction action which was dismissed. This is the second time.

"THE COURT: Does there have to be a new notice for each eviction action?

"MR. MORT: I'm not contesting the —

"MR. SHAPIRO: If the Court will recollect, on the prior eviction notice, * * * [there was] a question about the efficiency in the warning notice in the language of the notice; so in that case, the case was withdrawn and a new notice was drawn.

"THE COURT: I find that notice adequate, so we'll rule if I haven't already on that provision, that that notice has been met and go ahead and proceed now."

We find that counsel for Mr. Williams has admitted that Mr. Williams received a notice on July 30, 1980 which complied with the requirements of R.C. 5321.17(B). An attorney of record can make statements on behalf of his clients which are authorized, and these may be held as admissions unless the client does not know about the statements. *Garrett* v. *Hanshue* (1895), 53 Ohio St. 482. The fact that notice made in compliance with R.C. 5321.17(B) was involved in litigation which was dismissed is of no consequence.

The only important question is did the tenant receive a thirty-day notice of termination of the lease in compliance with R.C. 5321.17(B) which preceded the giving of the three-day notice mandated by R.C. 1923.04(A). *Ewert* v. *Basinger, supra* (59 Ohio Misc. 43 [11 O.O.3d 171]). A notice under R.C. 5321.17(B) need not contain the conspicuous warning required by R.C. 1923.04(A).

The record discloses that on October 16, 1980, Fannie Calkins served a notice to leave the premises on the appellant's wife. This notice was identified in the record as Exhibit 1 and we note that it was dated October 16, 1980, notifying Mr. Williams to leave the premises by November 16, 1980. This notice bears the conspicuous language required by R.C. 1923.04(A). The fact that this notice gives more than three days in which to vacate the premises is of no consequence, as this additional twenty-seven-day grace period can only inure to appellant's benefit. Indeed, counsel for appellant admits that appellant received this notice dated October 16, 1980. We also note the record reveals that no rent was accepted by Voyager Village Limited after the initial thirty-day termination notice was served on July 30, 1980.

Therefore, we find that the three separate jurisdictional steps for bringing an action in forcible entry and detainer were met by Voyager Village Limited. *Ewert* v. *Basinger, supra; Siegler* v. *Batdorff, supra.*

The first assignment of error is thus not well taken.

## II

Appellant's second assignment of error is:

"The court below erred in denying appellant the right to introduce testimony relating to the issue of retaliatory eviction, and by holding that retaliatory eviction was not a valid defense to the action below."

Mr. Williams contends that the trial court should not have granted Voyager Village Limited restitution of the premises because the complaint in forcible entry and detainer was filed as a retaliatory action, which is prohibited by Ohio law.

R.C. 3733.09 provides, in part, as follows:

"(A) Subject to section 3733.091 of the Revised Code, a park operator shall not retaliate against a tenant by increasing the tenant's rent, decreasing services that are due to the tenant, or bringing or threatening to bring an action for possession of the tenant's premises because:

"(1) The tenant has complained to an appropriate governmental agency of a violation of a building, housing, health, or safety code that is applicable to the premises, and the violation materially affects health and safety;

"(2) The tenant has complained to the park operator of any violation of section 3733.10 of the Revised Code;

"(3) The tenant joined with other tenants for the purpose of negotiating or dealing collectively with the park operator on any of the terms and conditions of a rental agreement."

Voyager Village Limited's witness, Mrs. Fannie Calkins, testified at trial that she had received a letter from the Williams family prior to any institution of eviction action by the park operator. This letter contained a copy of a letter sent by the tenants of SVMHP in the SVTA to the park operator.

Mrs. Calkins further testified that she had received a letter from Mrs. Williams. This letter contained the following paragraph:

"We have also recently had a person from the Department of Health here to inspect the lot and to discuss the water and swamp-like condition of our lot and it was the fault of the owners of this park and not our own and that it should be corrected."

This letter had been sent to the park operator in April 1980.

Additionally, Mr. Williams testified at

trial that he had helped to form the tenant's association — SVTA.

Had the court below permitted Jackson Taylor to testify, Mr. Taylor would have testified that during the course of a conversation he had with Mr. Calkins, Mr. Calkins said, "the mobile home park would be a better place as soon as the troublemakers were gone."

One of the problems that Mr. Williams had complained of was the lack of proper water drainage. He contended that this drainage problem caused the park operator to fail to meet the requirements of R.C. 3733.10(A)(1), (2), (3) and (4), which section is referred to in R.C. 3733.09(A)(2). Mr. Williams contended that the park operator failed to maintain storm sewers in good and safe working order and condition. Had the storm sewers been in good working condition, the drainage problem would not have existed and plagued Mr. Williams.

Mr. Williams argued that the limited time frame between the letters from Mrs. Williams and the SVTA reasonably presented a question as to whether or not the park operator acted in a retaliatory manner by filing an eviction action against Mr. Williams.

The trial court did not permit development of this issue as plaintiff asserted at trial that Mr. Willams was holding over term. The trial court then held that retaliatory eviction was not a valid defense based on R.C. 3733.091, which provides, in part:

"(A) Notwithstanding section 3733.09 of the Revised Code, a park operator may bring an action under Chapter 1923 of the Revised Code for possession of the premises if:

"* * *

"(3) *The tenant* is holding *over his term*[.]" (Emphasis added.)

Mr. Williams tendered his rent payments to the managers of SVMHP, but these payments were refused. Mr. Williams argues that the trial court's erroneous failure to allow him to develop testimony relating to retaliatory eviction significantly harmed his cause at trial, and that it is likely that judgment would not have been granted to the plaintiff had these matters been admitted into evidence.

On the other hand, Voyager Village Limited contends that no evidence concerning retaliatory motives of the landlord should have been admitted since, after September 1, 1980, appellant was a "holdover" tenant. R.C. 5321.03(A)(4). This justification is not innovative. Where the tenant no longer has possessory rights to protect he should not be protected from eviction. In the matter *sub judice*, Mr. Williams was a month-to-month tenant under an oral lease agreement. The problem that arises from this exception is that it could be employed to vitiate the protection afforded by the defense of retaliation as regards any periodic tenant, since it could be reasoned that a periodic tenant becomes a holdover after the landlord declares the tenancy terminated or declines to renew. R.C. 5321.17(A) and (B).

Such an interpretation is circular; it makes a nullity of the retaliation defense because the label of "holdover" summarily disposes of the entire issue, *i.e.*, whether the landlord had a right to evict in the first instance. *Edwards* v. *Habib* (C.A. D.C., 1968), 397 F. 2d 687, 702; Moskovitz, Retaliatory Eviction — A New Doctrine in California, 46 Cal. St. B.J. 23, 31 (1971); Schoshinski, Remedies of the Indigent Tenant: Proposal for Change, 54 Geo. L.J., Part I, 519, 541-542 (1966). The actual issue that arises when the retaliation defense is asserted by a periodic tenant is not whether the landlord may evict a holdover tenant, but whether the law will label the tenant a holdover. It is that status which must be confronted first in the litigation process. Notes, The Ohio Landlord and Tenant Reform Act of 1974, 25 Case W. Res. L. Rev. 876 (1975).

Although the holdover exception may appear to be especially harsh for the

periodic tenant, not every application of the holdover exception will produce such inequitable results. For example, where a notice of termination precedes the tenant's engaging in activities, not even the periodic tenant could complain of the eviction or termination. At the very least, then, the holdover exception should remove the need to litigate the tenant's intent to frustrate a nonretaliatory termination by engaging in protected activities subsequent to receipt of the notice of eviction or termination.

In *Edwards* v. *Habib, supra* (397 F. 2d), at page 699, the court stated:

"It is true that in making his affirmative case for possession the landlord need only show that his tenant has been given the 30-day statutory notice, and he need not assign any reason for evicting a tenant who does not occupy the premises under a lease. But while the landlord may evict for any legal reason or for no reason at all, he is not, we hold, free to evict in retaliation for his tenant's report of housing code violations to the authorities. As a matter of statutory construction and for reasons of public policy, such an eviction cannot be permitted."[1]

The housing codes of the state and municipal governments indicate a strong, persuasive legislative intent to secure for the public safe and sanitary places to live. Effective implementation and enforcement of the codes obviously depend in part on private initiative in the reporting of violations. To permit retaliatory evictions, then, would clearly frustrate the effectiveness of the housing, health and safety codes as a means of upgrading the quality of life in Ohio. R.C. 3733.09 was enacted to insure the effectiveness of these public health and safety measures. Obviously, a tenant will think long and hard before he reports violations if his answer will be eviction.

We believe that the legislature did not mean to exclude the month-to-month periodic tenant from protection of the Landlords and Tenants Act of 1974. If Mr. Williams can prove that he had complained to an appropriate governmental agency of a violation of a building, housing, health or safety code that is applicable to his premises, or complained to the park operator of any violation of R.C. 3733.10, or joined with other tenants for the purpose of negotiating with the park operator concerning conditions of a rental agreement, *and* that the landlord took his action to evict or terminate the lease because of these actions, then he may use the retaliatory action of the park operator (landlord) as a defense to an action by the park operator to recover possession of the premises and to recover possession of the premises himself. R.C. 3733.09(B)(1) and (2).

An examination of the record indicates that the trial court was unsure as to whether a month-to-month tenant could raise the defense of retaliation by the landlord, but did decide to hear testimony concerning retaliation.

Fannie Calkins testified that she was employed by Voyager Village Limited as

---

[1] In *L'Orange* v. *Medical Protective Co.* (C.A. 6, 1968), 394 F. 2d 57 [45 O.O.2d 314], the Sixth Circuit held that a malpractice insurer could not cancel the policy of an Ohio dentist simply because the insured testified in a malpractice suit against a colleague insured by the same company. Presumably, the policy could have been cancelled for any lawful reason or for no reason at all, but it could not be cancelled for the purpose of intimidating a witness in contravention of Ohio's public policy. See, also, *Petermann* v. *International Brotherhood of Teamsters* (1959), 174 Cal. App. 2d 184, 344 P. 2d 25, which held that a union could not fire one of its employees even though there was no fixed term of employment if the reason for the dismissal of the employee was his refusal to give false testimony before a legislative investigating committee. Such a dismissal, it was held, contravened California's policy against perjury.

manager of the mobile park. On cross-examination she testified that she was aware that there had been a tenant's association formed at the Spring Valley Mobile Home Park (SVMHP). In addition, she testified that she did not know whether Mr. and Mrs. Williams were members of the association because the letter she received had no names signed to it.

She further testified that she received a letter from Mrs. Williams concerning a drainage problem and that she (Mrs. Calkins) understood from the general manager that the drainage problem would be an extensive job. She was shown defendant's Exhibit A and it was identified as the letter she received from Mrs. Williams. The letter reads, in part:

"* * * There is only a small wooden platform on which garbbage [sic] can's [sic] can be kept out of the water and the mud. Which you can tell by the picture is a serious problem though no fault of our own. 4"-5" of water to 4"-5" of mud is not very pleasant.

"We have also recently had a person from the Dept. of Health here to inspect the lot to discuss the water-swamp-like condition of our lot and it was the opinion this condition was the fault of the owner's [sic] of this park and not our own and that it should be corrected.

"Thank you,
"Sharon Williams"

The date of the letter from Mrs. Williams to Spring Valley Estates is unclear from the record but the letter makes reference to enclosure of the April rent and a money order dated 4-3-80. Mrs. Calkins testified that she received a letter from the tenant's association but was unaware that Mr. and Mrs. Williams were members of the association as no names were on the letter, defendant's Exhibit B.

Defendant's Exhibit B reads:

"Spring Valley Tenants Assoc.
"444 Ackerman Pl.
"Xenia, OH 45385
"To Parties Concerned:

"These copies have been prepared after consultation with the Attorney for Montgomery Co. Fair Housing Center, who also represents the Greene County Housing Authority.

"Numerous complaints have been voiced by various residents of Spring Valley Estates, 1830 St. Rt. 725, about the conduct and demeanor of the Manager and Management of this Mobile Home Park.

"Conduct that is believed to be on the verge of illegality or in fact is so. Complaints such as:

"(1) Failure to notify tenants in writing at least 24 hrs. before such inspection and to set times convenient to both parties as is required by law.

"(2) Failure to conduct such business during normal and usual business hours. On numerous occasions, Mr. Calkins has done this at such times as 7:30-8:30 p.m. in the evenings. On weekends this has also been the pattern of his behavior. This is not by normal standards, normal business hours. Tenants, after working all day, should not be subjected to, nor need * * * tolerate such behavior. Their evenings, weekends, and holidays need not [be] interrupted by offensive, loud, humiliating, embarrassing, and uncivil behavior. Such conduct is in fact prohibited by the law of the State of Ohio.

"(3) Failure to properly maintain lots and services as by common agreement and required by law. Then threatening tenants with eviction because of these same conditions.

"(4) Other demeanor and behavior that would require too much space and time to catalog.

"(5) While both ourselves and Montgomery-Greene County Housing Authority realize management and their representative, Mr. B. Calkins, do have a job and responcibility [sic] to perform for the sake and welfare of all parties concerned, their [sic] are rules and laws

governing such business, and the conduct of this business.

"This information has been copied verbatim from the Ohio State Law so that residents can be factually informed of their rights under Ohio Law.

"Also, that these residents need not tolerate unfair or possible illegal actions against themselves. Fear of intimidation or retribution for insisting on their rights need not be tolerated as it is contrary to and against the laws of the state of Ohio, and is so stated in these copies.

"Any tenant who feels or believes they are being treated unfairly has the choice of contacting:

"Greene Metropolitan Housing

"137 N. Detroit St.

"Xenia, Ohio 45385

"This is the proper Government Agency if tenants do have problems. The Agency does have attorneys to represent tenants in event legal action is necessary."

Mrs. Calkins testified that she was never contacted by the Greene County Health Department regarding the drainage problem and, to her knowledge, no inspection by the department took place. She further stated that the reason her corporation wanted Mr. Williams "out" was unrelated to the complaints.

The appellant, Frank Williams, testified that he was a member of the Spring Valley Tenant's Association and that the association had attempted to negotiate with the park owner in reference to the drainage problem, but nothing came of the negotiations. He stated that he complained directly to the park operator about the conditions of the water and the damage to his mobile home. He testified that the water problem had gotten worse over a two and one-half year period and that he attempted to solve the drainage problem himself, but was unsuccessful. He stated that he was promised by Mrs. Calkins and the owner that the condition would be corrected. He stated that he complained to the Greene County Health Department and Housing Authority about the water problem. He testified that defendant's Exhibit B (the tenant association's letter) was sent, by him, certified mail to the managers and the landlord.

Mr. Williams' counsel attempted to present a Jackson Taylor, a tenant at the Spring Valley Mobile Home Park, but he was not permitted to testify by the trial court. The appellant's counsel proffered Mr. Taylor's testimony:

"MR. MORT: The substance of his testimony would be that [the] conversation he had with the landlord and the statements the landlord made in reference to the mobile home park *that it would be a better place when they got the troublemakers out of there.*" (Emphasis added.)

Miss Linda Murack, the Xenia Area Housing Coordinator, testified that, after Mr. Williams came to her and after he passed out literature about mobile home law in the park and after she had contacted the health department, then the eviction proceedings against Mr. Williams followed. She testified that this took place in the Spring of 1980 and that she contacted the health department in May 1980. The record discloses that the park operator gave his termination notice to appellant on July 30, 1980. She further testified that she called Mrs. Calkins and asked her if she would be willing to meet with the tenant's association, but that Mrs. Calkins declined to meet with the association.

In light of the testimony that the park operator and its agents were aware of the complaints made by appellant and the tenant's association and that appellant had contacted a government agency about their complaints prior to the eviction proceedings, the testimony of Mr. Taylor was highly relevant to the motives of the appellee in terminating appellant's oral lease. We find that the trial court's exclusion of this evidence was prejudicial error, and we remand this matter to the trial

court for a determination of whether the appellant sustained his burden in proving that the eviction proceedings were retaliatory in nature. The burden of proof required of appellant is by a preponderance of the evidence. If Mr. Williams does so, the landlord then has the burden of proving that there was a legitimate justification for the eviction proceedings. *Karas* v. *Floyd* (1981), 20 O.O. 3d 439. In summation, if a month-to-month tenant can establish that the landlord had retaliatory motives in terminating the lease, he is entitled to protection under the Landlords and Tenants Act.

The second assignment of error is well taken.

The judgment is reversed and the cause is remanded to the trial court for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

PHILLIPS and WILSON, JJ., concur.