703 P.2d 1218

**PHELPS DODGE CORPORATION, a New York corporation, Plaintiff/Appellee/Cross-Appellant,**

v.

**Arturo GALVEZ and Nora Galvez, husband and wife, Defendants/Appellants/Cross-Appellees,**

and

**William Puffer and Dorothy Puffer, husband and wife, Defendants/Appellants.**

No. 2–CA–CIV 5065.

Court of Appeals of Arizona, Division 2.

March 6, 1985.

Evans, Kitchel & Jenckes, P.C. by Leon D. Bess, Don J. Miner and Julie A. Doherty, Phoenix, for plaintiff/appellee/cross-appellant.

Messing, McCrory & Glicksman, P.C. by Michael W.L. McCrory and Stompoly & Even, P.C. by Barry Kirschner and Charles E. Giddings, Tucson, for defendants/appellants/cross-appellees.

## OPINION

HATHAWAY, Judge.

This appeal arises out of two forcible detainer actions filed by appellee (Phelps Dodge) against two striking miners, appellants (Galvez and Puffer), consolidated on appeal.

The cases were heard in different divisions of the superior court. Cross-motions for summary judgment were filed and following oral argument in each, Phelps Dodge's motion for summary judgment was granted and appellants' motions were denied. In the Puffer case, Pima County Superior Court cause number 211979, judgment was entered awarding Phelps Dodge possession of its premises, ordering Puffer to vacate the premises and ordering each party to bear their own costs and attorney's fees, but expressly declining to make findings as to unpaid rent due. In the Galvez case, Pima County Superior Court cause number 211980, the judgment entered in favor of Phelps Dodge ordered

Galvez to vacate Phelps Dodge's property, awarded Phelps Dodge all due rent and held that the issue of entitlement to attorneys fees was not cognizable in forcible detainer proceedings and therefore denied Phelps Dodge's request for attorney's fees. Phelps Dodge cross-appeals on the latter question.

This court has jurisdiction over the appeal and cross-appeal pursuant to A.R.S. §§ 12–120.21(A)(1) and 12–2101(B).

The parties agree that the forcible detainer actions arise out of strike activities against Phelps Dodge at its mine in Ajo, a company town. Phelps Dodge is the primary, and almost exclusive, employer in Ajo. It also owns most of the property, including the housing.

Phelps Dodge leased the premises at issue to Galvez and Puffer as company employees. The written residential rental agreement with Puffer is dated April 15, 1980, and the Galvez agreement is dated January 15, 1980. Pursuant to both agreements, the respective properties were rented on a week-to-week tenancy basis. Both agreements provide in paragraph 9 that either the landlord or the tenant may terminate the agreement for any reason upon 10 or more days' written notice:

> "Whether or not a breach of or default under this lease has occurred or is continuing, Tenant and Company each shall have the right to terminate this lease by a written notice delivered to the other party at least ten (10) days prior to the termination date specified in the notice. In addition to Company's rights and remedies under this Section 9 and under other provisions of this lease and without in any way limiting the right of Company to terminate this lease as provided in the immediately preceding sentence hereof, Company hereby reserves unto itself all the rights and remedies of a landlord at equity and under applicable law."

In statements given in their depositions, both appellants acknowledged that they understood that the clause gave them, as well as Phelps Dodge, the right to terminate the agreement at any time by giving the prescribed notice. Puffer was notified on July 23, 1983, that he was discharged for alleged strike misconduct. Galvez was notified on July 19, 1983, that he was not acceptable for recall from layoff because of alleged strike misconduct. In accordance with the agreements, Phelps Dodge gave written notice of its intent to terminate the tenancies. The termination notice was given to Puffer on August 3, 1983, and to Galvez on August 13, 1983. The notices informed the tenants that their week-to-week leases would be terminated and advised them of the effective date of termination and that they must quit and surrender the premises on or before such date. Appellants acknowledged receipt of the notices, but refused to vacate the premises. Consequently, Phelps Dodge brought these forcible detainer proceedings.

Thomas Keller, the Phelps Dodge employment/rental agent in Ajo, had authority to terminate rental agreements for various reasons including flagrant violations of the agreements, a separation from the company payroll for any reason, or a failure to pay rent. He testified:

> "... primarily the housing is designed for active employees and that was—anytime we had one separated from the payroll, for, what, any reason, retirement, discharge, quitting, we would give them notice of house termination as a matter of policy. Give them 30 days to vacate the premises and, of course, if we went into—luckily we didn't have too many cases where we would have to go into eviction or forcible detainer action.
>
> \*     \*     \*     \*     \*     \*
>
> ... Again, housing is limited and primarily designed for active employees."

Thus, Phelps Dodge's policy is to provide housing primarily for active employees and when employees are separated from the payroll, company housing appears typically

to be terminated. This is Phelps Dodge's asserted basis for termination of appellants' rental agreement.

Union negotiating representatives complained during collective bargaining negotiations about certain rental agreement termination notices that had been received by union members. The matter was discussed between Phelps Dodge and the union and the termination policy was modified in a letter dated September 12, 1983, to the chairman of the union bargaining committee. The letter provided that if an employee disputes his or her discharge or loss of recall eligibility by filing a charge against Phelps Dodge with the National Labor Relations Board (NLRB), Phelps Dodge would proceed to recover possession of its rental housing from such individual if that person remained discharged or ineligible for recall after the case had been "completed." Completion was defined to include a decision of a regional director of the NLRB not to issue a complaint regarding a discharge or decision not to recall.

Phelps Dodge's position is that its decision to modify its rental agreement termination policy did not affect appellants because the policy modification did not occur until after the appellants' rental agreements had been terminated, and in any event, appellants' cases had already been "completed" within the meaning of the September 12, 1983, letter, since the regional director of the NLRB had issued his letter finding no violation by Phelps Dodge and declined to issue a complaint on behalf of appellants.

Appellants raise the following issues on appeal:

1. Did both courts err in granting judgments in favor of Phelps Dodge on the issue of possession while denying appellants opportunities to raise equitable defenses and defenses based upon the Arizona Residential Landlord/Tenant Act?

2. Did both courts err in granting summary judgment for Phelps Dodge on the right of possession where there were disputes as to material facts and inferences?

3. Did the court err in the Galvez case by denying appellant's right to present evidence regarding the wife's right to continue to rent the property as an employee of Phelps Dodge?

4. Did the court err in the Galvez case by granting a judgment for unpaid rent when there were disputed facts as to whether the rent was due?

I.

Appellants contend that in the two forcible detainer actions, they sought and were denied opportunities to raise defenses to Phelps Dodge's right to possession. Appellants allege that Phelps Dodge was seeking possession in bad faith and in retaliation for the tenants' assertions of their rights. They point out that in the Galvez case the trial judge specifically held that the employer-employee relationship between the parties and the fact that appellants were on strike against Phelps Dodge were irrelevant. These issues, appellants argue, were at the core of the defenses of bad faith and retaliation and their exclusion denied them the right to present their own evidence on these issues. They point out that the trial judge in the Puffer case implicitly reached the same conclusion by ruling only on the Phelps Dodge motion for summary judgment and the narrow issues presented therein.

▮ Phelps Dodge responds that the trial courts properly refused to hear appellants' defenses in the forcible detainer proceedings because, as a matter of state law, those defenses did not arise out of the Arizona Residential Landlord/Tenant Act (ARLTA) or the parties' lease agreement. Additionally, appellants contend that Phelps Dodge terminated the lease agreements in an attempt to interfere with or retaliate against the appellants' union activities and participation in the labor strike. Their position, in essence, was that Phelps

Dodge's action constituted an interference with appellants' rights guaranteed them by section 7 of the NLRA 29 U.S.C. § 157 (1973). Appellee answers that such interference, if any, with appellants' labor activities is not within the purview of ARLTA. We agree with appellee's position. The NLRA provides:

"The [National Labor Relations] Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. *This power shall not be affected by any other means of adjustment* or prevention that has been or may be established by agreement, law or otherwise." (Emphasis added) 29 U.S.C. § 160(a).

This preemption doctrine has been applied to state courts by the United States Supreme Court in *San Diego Building Trades Council, Etc. v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), where the court stated:

"When an activity is arguably subject to § 7 or § 8 of the Act, the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 79 S.Ct. at 780.

Because section 7 of the NLRA protects the type of activity upon which appellants base their defenses, the NLRB has the sole and exclusive jurisdiction to entertain these claims. Id.

With regard to appellee's position that appellants' defenses do not arise out of the ARLTA, it should first be observed that the Act specifies the retaliatory conduct of the landlord which is prohibited in A.R.S. § 33–1381, which provides:

"A. Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after any of the following:

1. The tenant has complained to a governmental agency charged with responsi-

bility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health and safety.

2. The tenant has complained to the landlord of a violation under § 33–1324.

3. The tenant has organized or become a member of a tenants' union or similar organization.

4. The tenant has complained to a governmental agency charged with the responsibility for enforcement of the wage-price stabilization act.

B. If the landlord acts in violation of subsection A of this section, the tenant is entitled to the remedies provided in § 33–1367 and has a defense in action against him for possession. In an action by or against the tenant, evidence of a complaint within six months prior to the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation. The presumption does not arise if the tenant made the complaint after notice of termination of the rental agreement. 'Presumption', in this subsection, means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence.

C. Notwithstanding subsections A and B of this section, a landlord may bring an action for possession if either of the following occurs:

1. The violation of the applicable building or housing code was caused primarily by lack of reasonable care by the tenant or other person in his household or upon the premises with his consent.

2. The tenant is in default in rent. The maintenance of the action does not release the landlord from liability under § 33–1361, subsection B."

It is apparent that appellants' retaliation claim has no basis in the act which lists four specific tenant activities and provides if a tenant engages in any of those activi-

ties and a landlord thereafter institutes an action for possession, such action could be deemed retaliatory. Cf. *Van Buren Apartments v. Adams,* 145 Ariz. 325, 701 P.2d 583 (1984). Appellants contend that they specifically come within the provisions of A.R.S. § 33–1381(A)(3) which states that a landlord may not retaliate by bringing an action for possession after:

"The tenant has organized or become a member of a tenants' union or similar organization."

Appellants argue that a tenant's union is an organization of tenants which bargains with a common landlord over the terms and conditions of their tenancy. They contend that they were members of precisely such an organization, i.e., their respective labor unions. We disagree. Their union membership was far beyond that of a mere tenants' union which we believe is envisioned in the act. Nor do we conceive their union, which presumably deals with the broad spectrum of employer-employee relationships, to be a similar organization. The ARLTA lists very specific types of tenant activity and provides that if tenants are engaged in such activity and a landlord thereafter institutes possessory proceedings, those proceedings could be deemed retaliatory. The type of conduct detailed in the statute is not borne out by the record. We conclude, therefore, that appellants are not within the class of persons included within the ambit of the statute. The act is calculated to protect tenants from retaliation for conduct by the tenant with respect to the tenancy. Forcible detainer affords an expeditious summary remedy for possession unencumbered by collateral controversies. The act does not alter that objective. *Mead, Samuel & Company, Inc. v. Dyar,* 127 Ariz. 565, 622 P.2d 512 (App. 1980).

## II.

■ Appellants contend that the summary judgments were erroneously awarded because there are disputes regarding mate-rial facts and inferences as to whether appellee waived the notice terminating appellants' tenancies. The waiver argument stems from labor discussions relative to the suspension of the processing of eviction actions with respect to discharged strikers. As a result of those negotiations, the following letter from M.P. Scanlon, vice president of Phelps Dodge, was sent to Alex Q. Lopez, chairman of Phelps Dodge's national negotiating committee on September 12, 1983:

"Per your request at last Thursday's bargaining session, this will set forth the measures Phelps Dodge Corporation intends to take to make Company housing available to its newly-hired employees at Ajo and Morenci:

1. A number of former employees at each location have been or may be discharged by the Company for strike-related misconduct, and a further number of laid-off ex-employees at each location have been or may be notified that they are no longer eligible to be recalled to employment because of strike-related misconduct. In the case of any such person who is a tenant in Company rental housing and who remains discharged or ineligible for recall after the handling of his case has been completed, the Company intends to proceed promptly by whatever means are necessary, including eviction, to recover possession of its rental property. For the purposes of this paragraph a failure to appeal the denial of a grievance to arbitration within the applicable time limits, the decision of an arbitrator or the National Labor Relations Board or a panel thereof or the decision of the Regional Director of the NLRB not to issue a complaint will be regarded as completing the handling of a case.

Until the handling of a person's case has been completed, he or she will be treated in the same manner as other strikers, as set forth in paragraph 2 below.

2. The company intends to make suitable rental housing available to all of its

employees, including newly-hired employees, at Ajo and Morenci who wish to avail themselves of it. If the Company determines that, in order to accomplish that aim, it is desirable to require certain strikers who have been permanently replaced to vacate Company rental housing, the Company will cancel the lease agreements with such persons and take such other steps, including eviction, as are necessary to make suitable Company rental housing available to our current employees. Any such actions will be confined to the numbers and types of rental units required, as determined by the Company, except that the Company reserves the right also to recover possession of its rental property from any tenant who is or becomes delinquent in his rental payments, or who is or becomes an undesirable tenant for any other reason."

Assuming that the arrangement to suspend eviction proceedings is cognizable in this forcible detainer action, a question which we consider to be fairly debatable in view of the NLRA implications, the record discloses that appellants do not fall within the class of individuals included in such waiver because their cases had been completed within the definition of the September 12, 1983, letter.

Appellants contend that appellee violated its policy of not evicting discharged employees while they had pending grievances regarding the validity of their discharge. As we understand appellants' argument, it is that as a result of this policy, appellee was estopped from maintaining the forcible detainer actions. We disagree. If this difference is cognizable in the present forcible detainer actions, the letter of September 12, 1983, apprised tenants of appellee's most recent position with respect to forcible detainer actions which had evolved from the recent bargaining session. We find nothing in the record which supports appellants' estoppel theory. The lease termination provisions are permissible, A.R.S. §§ 33–1314(A) and 33–1375(A), and were complied with.

### III.

At the time the summary judgment was granted in the Galvez case, Mrs. Galvez was a regular employee of Phelps Dodge in a subsidiary business entity. It is contended that because of her employment she was entitled to rent company housing. The trial judge ruled, "... the fact that the Defendant/Wife, Nora Galvez, is still an employee of Plaintiff Corporation is not relevant to the right of possession of the premises." By so ruling, it is argued that the court denied any opportunity to present an equitable defense based on the wife's right to assume the lease and continue the tenancy in her own name. We disagree. The residential rental agreement expressly provides that the lease may be terminated for any reason upon 10 days' written notice. Neither the agreement nor the act provides that either parties' termination rights are affected by the nature of appellant's employment status. The trial court properly determined that the employment status of Mrs. Galvez had no relevancy to any of the issues cognizable in the forcible detainer proceedings.

### IV

Appellants contend that the trial court erred in the Galvez case by granting a summary judgment for unpaid rent where there were disputed facts as to whether all the rent was in fact due. No reference to the record is given as to where the facts are disputed. It is conceded at oral argument that the amount of unpaid rent is undisputed. Although appellees do not respond to this issue, we find it is not a debatable issue and affirm.

### CROSS–APPEAL

The trial court in the Galvez case found that the question of whether or not appellee was entitled to reasonable attorney's fees was an issue not cognizable in the forcible detainer proceeding and they were denied. We disagree with appellants'

**76**

position that this matter was not raised in the trial court. The matter was brought before the court and it ruled against appellee. Appellants concede that *DVM Co. v. Stag Tobacconist, Ltd.,* 137 Ariz. 466, 671 P.2d 907 (1983), was brought to the trial court's attention and read by it. There, the Arizona Supreme Court held that at the time of the trial there were no statutory provisions allowing attorney's fees as part of the judgment in a forcible entry and detainer action. The supreme court made its decision applicable only to matters brought prior to the effective date of the statutory amendment of A.R.S. § 33–1315(A)(2):

> "... making a prevailing party in a forcible entry and detainer action eligible to be awarded attorney's fees pursuant to A.R.S. § 12–341.01 regardless of whether the rental agreement provides for such an award." 137 Ariz. 466, 467 n. 1, 671 P.2d 907.

An addendum to the Galvez residential rental agreement expressly provides that the prevailing party in a forcible detainer action may be awarded attorney's fees. Therefore, appellee was eligible to recover its attorney's fees under that agreement.

The judgment against Puffer, Pima County Superior Court cause number 211979, is affirmed. The judgment against Galvez, Pima County Superior Court cause number 211980, is reversed as to the finding that the issue of entitlement to attorney's fees was not cognizable in forcible detainer proceedings and is remanded for further proceedings on the issue of attorney's fees.

BIRDSALL, C.J., and HOWARD, J., concur.