701 P.2d 583

**VAN BUREN APARTMENTS, a general partnership, Plaintiff/Appellee,**

v.

**Eric ADAMS and Dr. Illa A. Adams, husband and wife, Defendants/Appellants.**

**No. 2 CA–CIV 5224.**

Court of Appeals of Arizona, Division 2.

Dec. 26, 1984.

Review Denied June 25, 1985.

Schorr, Leonard & Felker, P.C. by Franklin O. Eldridge, Tucson, for plaintiff/appellee.

Daniel F. Davis, Tucson, for defendants/appellants.

Eric Adams, in pro. per.

## OPINION

HOWARD, Judge.

This is an appeal in a forcible entry and detainer action from the trial court's order requiring appellants to vacate an apartment owned by appellee. The main issue is whether the retaliatory eviction defense extends to summary proceedings instituted at the expiration of a fixed term lease. We hold that it does and reverse.

■ Appellants and appellee entered into a one-year lease which expired on June 30, 1984. On May 29, 1984, appellee informed appellants that their lease would not be renewed. On June 4, 1984, appellee offered to allow appellants to stay one additional month so that they would have time to find a new apartment. Appellee received no response to that offer and filed a forcible entry and detainer action. Appellants filed a document requesting a continuance of the trial for one month. In this request for a continuance they made complaints about the condition of the premises. This request was denied. At trial, appellants sought to defend the action on the ground that appellee refused to renew the lease in retaliation for appellants' complaints about the plumbing which were made within six months from the date when appellee refused to renew the lease. The trial court refused to hear any evidence of alleged retaliation and ordered appellants to vacate the premises. Appellants contend that the defense of retaliatory eviction was available to them by virtue of the enactment of the Arizona Residential Landlord and Tenant Act, A.R.S. § 33–1301 et seq. We agree.

In 1973 Arizona adopted a modified version of the Uniform Residential Landlord and Tenant Act. The Arizona act applies to the rental of dwelling units. A.R.S. § 33–1304. Its principal purpose is to encourage landlord and tenant to maintain and improve the quality of Arizona rental homes. See A.R.S. § 33–1302. Under § 33–1324 the landlord must maintain fit premises, including the maintenance in good and safe working order and condition of all plumbing and sanitary facilities supplied or required to be supplied by him.

Retaliatory conduct on the part of the landlord is prohibited by A.R.S. § 33–1381 which states:

"A. Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or *by bringing or threatening to bring an action for possession after any of the following:*

1. The tenant has complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health and safety.

2. *The tenant has complained to the landlord of a violation under § 33–1324.*

3. The tenant has organized or become a member of a tenants' union or similar organization.

4. The tenant has complained to a governmental agency charged with the responsibility for enforcement of the wage-price stabilization act.

B. If the landlord acts in violation of subsection A of this section, the tenant is entitled to the remedies provided in § 33–1367 and has a defense in action against him for possession. *In an action by or against the tenant, evidence of a complaint within six months prior to the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation.* The presumption does not arise if the tenant made the complaint after notice of termination of the rental agreement. 'Presumption', in this subsection, means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence.

C. Notwithstanding subsections A and B of this section, a landlord may bring an action for possession if either of the following occurs:

1. The violation of the applicable building or housing code was caused primarily by lack of reasonable care by the tenant or other person in his household or upon the premises with his consent.

2. The tenant is in default in rent. The maintenance of the action does not release the landlord from liability under § 33–1361, subsection B." (Emphasis added)

In addition to the foregoing statute, appellants rely principally upon two cases, *Golphin v. Park Monroe Associates*, 353 A.2d 314 (D.C.App.1976) and *Engler v. Capital Management Corporation*, 112 N.J.Super. 445, 271 A.2d 615 (1970). The *Golphin* case involves certain housing regulations of the District of Columbia which are similar to our act in preventing retaliatory conduct by a landlord. The tenant there had a one-year lease, which had expired, and refused to quit the premises. The facts disclose that it had been the landlord's established policy to allow tenants whose fixed-term lease had expired to remain as month-to-month tenants. It did not do so in Golphin's case allegedly because of Golphin's membership in a tenant organization. The trial court refused to allow Golphin to introduce any evidence relating to retaliatory conduct because D.C. Code Ann. § 45–901 (1973) stated that the landlord was entitled to possession immediately upon expiration of the term. The appellate court reversed and remanded. In so doing, the court found the landlord's established policy to be important and found the case did not present just a construction of § 45–901. It is evident that *Golphin* is not squarely on point with the case at bench.

In the *Engler* case tenants brought suit for an injunction to restrain the landlords from refusing to renew their leases at the expiration of their respective terms and to preclude the landlord's counterclaim for eviction. During the pendency of the litigation, the New Jersey legislature enacted a law prohibiting retaliatory eviction. The court in *Engler* refused to retroactively apply the recently enacted legislation but did hold that under the equitable doctrine of unclean hands the landlords were barred from refusing to renew the tenancies solely because of the tenants' activities with a tenants' association. While *Engler* is not on point, *Troy Hills v. Fischler*, 122 N.J. Super. 572, 301 A.2d 177 (1971) is closer to our case. There, the tenants had a two-year lease which had been extended for an additional year. The landlord had mailed the tenants a notice of its intent not to renew the lease. It admitted that one of the tenants was the president of a tenants' association, had been active in making complaints to municipal authorities regarding the condition of the property and had picketed the rental office. The court found, inter alia, that the New Jersey enactment applied to fixed-term leases, preventing non-renewal based on retaliatory conduct.

In support of its position, appellee relies on *Frenchtown Villa v. Meadors*, 117 Mich.App. 683, 324 N.W.2d 133 (1982) and *Siegler v. Batdorff*, 63 Ohio App.2d 76, 408 N.E.2d 1383 (1979).

In *Frenchtown Villa* the court held that the landlord's motivation in seeking repossession or declining to renew its fixed-term lease was not a defense to a summary proceeding instituted at the expiration of the fixed-term lease. This Michigan decision was based on the language of M.C.L. § 600.5720; MSA 27A.5720:

" '(1) A judgment for possession of the premises for an alleged *termination* of tenancy shall not be entered against a defendant if 1 or more of the following is established:

'(a) That the alleged *termination* was intended primarily as a penalty for the defendant's attempt to secure or enforce rights under the lease or agreement or under the laws of the state, of a governmental subdivision of this state, or of the United States.' " 324 N.W.2d at 135. (Emphasis added)

The court focused on the word "termination", first discussing month to month tenancies and then concluding:

"In contrast, a tenancy for a fixed term of years pursuant to a lease is ordinarily terminated on the expiration of the term of the tenancy as fixed by the lease.

Thus, a tenant's right to possession of leased premises expires or terminates pursuant to the lease absent the securing of an extension. [citation omitted] As a result, a landlord seeking repossession of premises upon the expiration of the term of a fixed lease does not terminate the tenancy, but merely seeks repossession pursuant to the termination that has otherwise taken place. Because the landlord has not independently caused the termination, his motivation in seeking repossession or declining to renew the lease agreement is irrelevant to the operation of M.C.L. § 600.5720; M.S.A. § 27A.5720. Under the clear, explicit and unambiguous language of the statute, the retaliatory eviction defense does not extend to summary proceedings instituted at the expiration of a fixed-term lease." 324 N.W.2d at 135–36.

The Michigan court came to its conclusion reluctantly, stating:

"We realize that our holding effects a severe limitation upon the retaliatory eviction defense. An unscrupulous landlord may accomplish the desired result of a retaliatory eviction, the intimidation of tenants, through the use of fixed-term leases. Although a fixed-term tenant is not in the same position of vulnerability as a month-to-month tenant, since his tenancy cannot otherwise at any time be terminated upon his landlord's whim, we consider retaliatory actions of any type abhorrent. Nevertheless, we are constrained to follow the dictates of the Legislature in this matter and enforce the retaliatory eviction statute as limited." 324 N.W.2d at 136.

It is clear that *Frenchtown Villa* is based on the particular language used in the Michigan statute.

The *Siegler* case is clearly distinguishable. Ohio Revised Code 5321.03 A(4) includes an exception to the retaliatory conduct defense not found in our statute. Ohio specifically provides that the defense does not apply if the tenant is holding over his term.

Appellee also relies on the language of A.R.S. § 33–1314(A) which gives the landlord and tenant the right to include provisions in the lease as to the length of the term. This reliance is misplaced because the same statute provides that the terms and conditions of the lease must comply with the rest of the act.

We believe the key to the resolution of this case is the language of A.R.S. § 33–1381. It is clear and unambiguous. There is no exception for tenants holding over their term. There is no language such as that found in the Michigan statute. As can be seen from the *Troy Hills* case, the concept of applying the prohibition against retaliatory conduct to fixed-term leases is not novel. In fact, Restatement (Second) of the Law, Property § 14.8, (1977) makes such an application:

"For the purposes of § 14.9, a landlord has taken retaliatory action against a tenant with respect to residential property whenever he undertakes to terminate a tenancy that is terminable by an appropriate notice, or *refuses to renew a tenancy for a specified term when that term ends*, if:

(1) there is a protective housing statute embodying a public purpose to insure proper conditions of housing, especially multi-unit housing designed for rental to tenants of low or moderate income;

(2) the landlord is in the business of renting residential property;

(3) the tenant is not materially in default in the performance of his obligations under the lease at the time the landlord acts;

(4) the landlord is primarily motivated in so acting because the tenant, either alone or through his participation in a lawful organization of tenants, has complained about a violation by the landlord of a protective housing statute; and

(5) the tenant's complaint was made in good faith and with reasonable cause." (Emphasis added)

Our legislature has made a similar application of the law by its enactment of the Residential Landlord and Tenant Act.

Appellants contend that judgment should be entered in their favor because the evidence of retaliation was uncontroverted. We do not agree. No evidence was ever taken on the issue. We do not consider appellants' statement to the court at the beginning of the case anything more than a rejected offer of proof.

Appellants also contend that they should be entitled to assert their "counterclaim". Tenants can assert counterclaims in a forcible entry and detainer action for landlord liabilities established by the rental agreement or by the terms of the act itself. *Mead, Samuel & Company, Inc. v. Dyar,* 127 Ariz. 565, 622 P.2d 512 (1980). The motion for continuance, which was filed by appellants in propria persona, contained statements about food being spoiled because the refrigerator was not repaired as requested. These appear to be the only statements which could be considered as a ground for a counterclaim.

Reversed and remanded for further proceedings consistent with this opinion.

BIRDSALL, C.J., and HATHAWAY, J., concur.