**Charles and Eileen Houle v. Kevin Quenneville and Louisa Lewis**

[787 A.2d 1258]

No. 00-034

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 9, 2001

*John F. Nicholls* and *David H. Gregg* of *Abare, Nicholls & Associates, P.C.*, Barre, for Plaintiffs-Appellees.

*John J. McCullough III, Vermont Legal Aid, Inc.*, Montpelier, for Defendants-Appellants.

**Amestoy, C.J.** Tenants Kevin Quenneville and Louisa Lewis appeal the order granting landlords Charles and Eileen Houle possession at the expiration of the rental term. Tenants contend: (1) landlords' notice of nonrenewal of their lease was insufficient because landlords did not provide the Vermont State Housing Authority (VSHA) with a contemporaneous copy of the notice; (2) the court failed to properly allocate the burden of proof on tenants' retaliatory eviction defense; and (3) the court erred in finding that the evidence was insufficient to support a retaliatory eviction. Because the requirements for notice to the VSHA do not apply to a notice of nonrenewal of a lease and the court properly found that tenants had failed to sustain their burden of proving their affirmative retaliatory eviction defense, we affirm.

On November 3, 1998, landlords and tenants executed a written rental agreement regarding the rental of an apartment in Barre, Vermont. The tenancy was subsidized by Section Eight housing assistance administered by the VSHA, and the parties also executed a VSHA owner-occupant lease. The term written in the lease was from November 3, 1998, to October 31, 1998. The court found that the intended expiration date of the lease was October 31, 1999. A provision of the VSHA lease provided that after the initial term "this Lease will renew on a month-to-month basis, unless the Owner [landlord] gives notice to the Tenant of Owner's intent not to renew the Lease."

Tenants took possession of the apartment on or about November 3, 1998. Shortly after taking occupancy, tenants discovered some problems, including an inadequate supply of hot water, a running toilet, leaking shower hose, falling window glazing, and a roll of carpet matting and other debris on the back porch. Tenants notified landlords of the problems. Landlords did not immediately correct the

problems, and on March 28, 1999, tenants mailed a letter to landlords detailing the infirmities and informing landlords that tenants would withhold their rent if landlords did not contact tenants within twenty-four hours to make arrangements to resolve the problems. Upon receiving the note, landlords confronted tenants and threatened to bring an action against them for violating the lease by disturbing other tenants. Landlords stated that they would only repair the toilet and asked tenants to voluntarily terminate the lease. Subsequently, landlords served tenants with a notice to vacate the premises by April 30, 1999, asserting tenants had harassed other tenants in violation of the lease. Upon delivering the notice, the sheriff changed the vacate date to May 8, 1999. Tenants then contacted the Building/Electrical Inspector for the City of Barre complaining about the problems with the apartment. After inspecting the premises, the inspector notified landlords that the debris on the porch landing constituted a fire hazard and must be removed.

Tenants did not quit the premises on April 30, or May 8, 1999, and landlords commenced an eviction action alleging tenants had violated the terms of the VSHA lease by disturbing other tenants. Tenants answered landlords' eviction complaint by denying that they had breached the terms of the rental agreement and raising the affirmative defenses that: (1) pursuant to 9 V.S.A. § 4467(b), notice to terminate tenancy for breach of the rental agreement must be served on the tenant at least thirty days before the termination date specified in the notice; and (2) the attempted eviction was in retaliation for tenants' actions in reporting health and safety code violations and other lawful activity by tenants to enforce landlords' obligation to maintain premises in a safe and sanitary condition.

Trial was set for July 7, 1999, but was continued on tenants' motion because discovery was not complete and landlords had recently retained counsel. Trial was rescheduled for October 8, 1999. On September 24, 1999, landlords served tenants with a written notice of intent not to renew the lease at its expiration on October 31, 1999. By this time, landlords had repaired many of the problems with the apartment, including the broken windows and shower and removed the carpet matting and debris from the porch. At a pretrial conference on September 27, 1999, the parties agreed to a continuance. The entry order of that date summarizing the reason for the continuance notes: "[tenants'] lease expires at the end of October and they have been given notice to leave. If they leave, no

issue. If not, there will be new issues. [Landlords] will notify court of dismissal if [tenants] leave."

Tenants did not vacate the apartment, and the matter came to trial on December 15, 1999. The court granted landlords' motion to amend their complaint to seek possession based on nonrenewal of the lease and the fact that tenants were holding over after the lease term. Tenants asserted that notwithstanding landlords' withdrawal of their eviction claim, the defense of retaliatory eviction was applicable to landlords' claim for possession based on nonrenewal because landlords still possessed a "retaliatory motive" for seeking to terminate tenants' possession of the apartment. Tenants also argued that landlords' September 24, 1999, notice of nonrenewal to tenants was defective because landlords did not provide VSHA with a contemporaneous copy of the notice.

The court concluded that the September 24, 1999 notice of nonrenewal was sufficient because the VSHA requirement that it receive a copy of landlords' notice to tenants is triggered only when landlords have initiated a complaint for eviction or other court action that would terminate a tenancy before the expiration of the lease. The court also concluded that to the extent VSHA required a contemporaneous notice of a court action, in the instant case, the requirement was satisfied by the presence of a VSHA representative at the December 15, 1999 hearing. The court further determined that landlords, although originally seeking to evict tenants in retaliation for tenants' threat to withhold rent and notify authorities about problems with the premises, did not have a retaliatory motive in deciding not to renew tenants' lease. The court emphasized the fact that most of the repairs had been completed and landlords had elected not to proceed with their eviction case, seeking instead possession based on tenants holding over after the expiration of the lease term.

## I. Notice of nonrenewal

Tenants first challenge the court's conclusion that landlords were not required to serve VSHA with a contemporaneous notice of their intent not to renew the lease. Tenants assert that neither landlords' April 1, 1999 notice to terminate the tenancy on good cause grounds, nor the September 24, 1999 notice of nonrenewal, was served on VSHA, and therefore, landlords failed to terminate the tenancy as required under the VSHA lease. In the original eviction action

precipitated by the April 1, 1999 good cause notice to terminate, tenants failed to allege insufficiency of the notice based on failure to serve a contemporaneous copy on VSHA. At trial, tenants' claim regarding failure to serve a contemporaneous notice on VSHA was limited to the September 24, 1999 notice of nonrenewal. Tenants have waived their claim that the April 1, 1999 notice was insufficient because it was not served on VSHA. See *In re M.M.*, 159 Vt. 41, 44, 613 A.2d 713, 715 (1992) (failure to raise arguments below amounts to a waiver).

Moreover, the court granted landlords' motion to amend their complaint to abandon the original eviction action and to proceed on the action for possession based on nonrenewal of the lease. At trial, tenants conceded that the insufficiency of the earlier notice had no relevance to the case in light of the court's ruling granting the amendment. Tenants have chosen not to appeal that part of the court's decision, and we will not disturb it here.

Regarding the September 24, 1999 notice of nonrenewal letter, tenants argue that it was invalid because Paragraph 13(b) of the VSHA owner-occupant lease unambiguously requires a landlord to serve tenant and VSHA with notice whenever a landlord seeks to terminate a tenancy for any reason. Paragraph 13 provides, in pertinent part:

> 13. Owner Termination Notice:
> A. Notice of *grounds*. The Owner [landlord] must give the Tenant a notice that specifies the grounds for termination of tenancy. *The notice of grounds must be given at or before commencement of the eviction action.* The notice of grounds may be included in or may be combined with any Owner *eviction notice* to the Tenant.
> B. State or local *eviction notice*. Owner *eviction notice* means notice to vacate, or a complaint or other initial pleading used under State or local law to commence an *eviction action*. The Owner must give the [VS]HA a copy of any Owner *eviction notice* to the Tenant at the same time the Owner gives notice to the Tenant.

VSHA Owner-Occupant Lease, Paragraph 13 (emphasis added). The plain meaning of the lease provision demonstrates its applicability only to eviction actions or actions to remove the tenant and terminate the tenancy on sufficient grounds during the lease term. *In re West*, 165

Vt. 445, 450, 685 A.2d 1099, 1103 (1996) ("When an agreement is clear and unambiguous, the plain meaning of the agreement governs its interpretation."). Indeed, the VSHA lease distinguishes between termination of the tenancy during the lease term and termination at the expiration of the lease term. During the term of the lease, the owner may terminate the tenancy only for (1) serious and repeated violations of the conditions of the lease; (2) violations of state, federal or local laws regarding the obligations of the tenant; (3) criminal activity or (4) other good cause. VSHA Owner-Occupant Lease, Paragraph 12(A). The VSHA lease specifically excludes termination for nonrenewal from the requirements attending termination for good cause grounds. The VSHA lease provides:

> The requirement to terminate tenancy for such grounds:
> 1. Only applies during the term of the Lease, including the initial term and any extension term; and
> 2. Does not apply if the Owner terminates the tenancy at the end of the initial term, or at the end of any successive definite term.

*Id.*, Paragraph 12(A).

Paragraph 13 covers the notice requirement for termination of the tenancy on good cause grounds during the term of the lease. The notice provision for terminating the tenancy after the lease term, however, is governed by Paragraph 3, which sets out the original lease term, then provides: "Thereafter, this Lease will renew on a month-to-month basis, unless the owner gives notice to the Tenant of Owner's intent not to renew the Lease." VSHA Owner-Occupant Lease, Paragraph 3. There is no requirement that VSHA receive a copy of the notice of nonrenewal, contemporaneous or otherwise. Any other construction would render Paragraphs 3 and 12 meaningless. In construing contracts, we must conclude that the parties included provisions for a reason. *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 159 Vt. 222, 232, 617 A.2d 123, 128 (1992) (citing *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 141 Vt. 138, 143, 446 A.2d 347, 349 (1982) (contract must be construed, if possible, to give meaning to all its provisions).[1]

---

[1] Tenants attempt to buttress their argument that landlords were required to serve VSHA with a contemporaneous notice of nonrenewal by reference to cases from other courts construing the federal regulation "that previously applied to Section 8 tenancies." At the time the parties entered into the rental agreement, however, the regulation no longer applied. Instead, the regulations in effect, at the time the parties entered into the

 We agree with the trial court that the VSHA lease did not impose upon landlords the additional obligation to serve a contemporaneous copy of the notice of nonrenewal on the VSHA. The lease executed between the parties required landlords to provide tenants with thirty days notice of their intent not to renew. The September 24, 1999 notice of nonrenewal provided tenants with more than thirty days notice that the lease would not be renewed at the expiration of its term on October 31, 1999. Accordingly, we agree that the notice of nonrenewal was adequate.

## II. Retaliatory eviction defense

Tenants claim that although the court correctly determined that the retaliatory eviction defense applies to termination of tenancies based on nonrenewal of the lease, the court erroneously assigned to tenants the burden of proving the defense. Landlords counter that the court erred in considering the defense at all, arguing that "[e]ssentially, in connection with an action for possession upon expiration of a lease, the defense of retaliatory eviction goes away." For the reasons set forth below, we conclude that the court correctly found the defense of retaliatory eviction applicable to the facts of this case, and properly allocated the burden of proof.

### A. Applicability of the retaliatory eviction defense

 The prohibition against retaliatory conduct is set out in 9 V.S.A. § 4465, which provides as follows:

> (a) A landlord of a residential dwelling unit may not retaliate *by establishing or changing terms of a rental agreement or by bringing or threatening to bring an action* against a tenant who:
> (1) has complained to a governmental agency charged with responsibility for enforcement of a building, housing or health regulation of a violation applicable to the premises materially affecting health and safety;
> (2) has complained to the landlord of a violation of this chapter; or
> (3) has organized or become a member of a tenant's union or similar organization.

---

rental agreement and at the expiration of the tenancy, required that landlords serve only the tenants. 24 C.F.R. § 882.511 (1998) & (1999).

(b) If the landlord acts in violation of this section, the tenant is entitled to recover damages and reasonable attorney's fees and has a defense in any retaliatory action for possession.

(Emphasis added.) The alleged retaliatory conduct in this action is the notice of nonrenewal of the lease landlords served on tenants during the initial term. The retaliatory conduct prohibited by the statute is not limited to eviction actions or otherwise restricted by modifiers to the term "action." The statutory language, prohibiting an action or threat of an action, is sufficiently broad and evinces the legislative intent to prohibit the nonrenewal of a fixed term lease and resultant summary proceedings instituted at the expiration of such a lease as reprisal for statutorily protected tenant activity.

■ Such a construction is consistent with the recommendation of the Restatement which includes nonrenewal of a lease as retaliatory conduct. Restatement (Second) of the Law of Property § 14.9 (1977) (retaliatory action against a tenant includes refusing to renew a tenancy for a specified term when that term ends). Following the Restatement, the Arizona Court of Appeals has also held that the retaliatory eviction defense extends to summary proceedings instituted at the expiration of a fixed term lease. *Van Buren Apartments v. Adams*, 701 P.2d 583, 586-87 (Ariz. Ct. App. 1984). The Arizona statute at issue in *Van Buren* specifically prohibits retaliation "by bringing or threatening to bring an action for possession." *Id.* at 584. Although our statute does not expressly apply to actions for possession, as noted above, by not limiting or defining the types of actions prohibited, the prohibition in the Vermont statute necessarily includes actions for possession. Accordingly, we adopt the holding of the *Van Buren* court. See also *Troy Hills Village, Inc. v. Fischler*, 301 A.2d 177, 181 (N.J. Super. Ct. Law Div. 1971) (statute's retaliatory conduct prohibition includes failure to renew a lease).

In so holding we find unpersuasive the contrary rule adopted by some sister state courts that the defense of retaliatory eviction is not available at the expiration of a fixed term lease, *Frenchtown Villa v. Meadors*, 324 N.W.2d 133, 135 (Mich. Ct. App. 1982) (landlord's motivation in seeking repossession or declining to renew its fixed-term lease was not a defense to a summary proceeding instituted at the expiration of the fixed term lease), or to holdovers, *Groton*

*Townhouse Apartments v. Covington*, 448 A.2d 221, 222 (Conn. Super. Ct. 1982) (retaliatory eviction defense does not extend to summary eviction proceedings at the termination of a tenancy where tenants were holding over).

The decision in *Frenchtown Villa* turned on the court's interpretation of the Michigan eviction statute, which "precludes a judgment for possession for an alleged termination of a tenancy where the *termination* was intended primarily as a penalty for the defendant's [tenant's] attempt to secure or enforce legal rights." *Frenchtown Villa*, 324 N.W.2d at 135. Because a fixed term lease automatically expires at the end of the term, "a landlord seeking repossession of premises upon the expiration of the term of a fixed lease does not terminate the tenancy, but merely seeks repossession pursuant to the termination that has otherwise taken place." *Id.* at 135. In reaching its decision, the Michigan Court of Appeals realized that its holding would "effect[] a severe limitation upon the retaliatory eviction defense," but felt constrained by the language of the retaliatory eviction statute. *Id.* at 136.

In Vermont, we have no such limitation. Our state's retaliatory eviction statute guards against retaliatory conduct which includes threatening or bringing an action. The present action is also factually distinguishable from *Frenchtown Villa*. The term lease here did not automatically expire at the end of the fixed term. Instead, both leases obligated landlords to notify tenants of their intent not to renew or the lease would automatically renew, either under the same terms, according to the parties' lease, or on a month-to month basis, pursuant to the VSHA lease.

The *Groton* reasoning is similarly unpersuasive. The Connecticut retaliatory eviction statute prohibits a landlord from, inter alia, maintaining "an action or proceeding against a tenant to recover possession of a dwelling unit." Conn. Gen. Stat. § 47a-20 (1994). The action under review in *Groton* was landlord's filing of its summary process complaint seeking possession. At the time of the filing, the tenancy had terminated, and the defendants were improperly holding over and no longer qualified as tenants as that term is defined under Connecticut's landlord tenant statute. Because the retaliatory eviction statute prohibits a landlord from evicting tenants, and the *Groton* defendants no longer satisfied the definition of tenants, the court reasoned they were no longer entitled to the defense. *Groton*, 448 A.2d at 222.

Here, however, the alleged retaliatory action which precipitated the defense is the notice of nonrenewal which was served during the initial term. At that time, tenants were not holdovers, but were holding pursuant to a valid lease. Accordingly, tenants still qualified as tenants, see 9 V.S.A. § 4451(9) (" 'Tenant' means a person entitled under a rental agreement to occupy a residential dwelling unit to the exclusion of others"), and were eligible to assert the retaliatory eviction defense. The protected activity, or complaints regarding the condition and safety of the premises and contacting the city housing inspector, likewise occurred during the initial term. Under the Vermont statute, landlords could not threaten an action as a reprisal for this protected activity. 9 V.S.A. § 4465.

■ Vermont's retaliatory eviction statute contemplates that the tenant's protected activity will precede the landlord's retaliatory action. 9 V.S.A. § 4465 (landlord may not retaliate against a tenant who has engaged in certain protected activity). In a case like this, where tenants invoke the defense in response to a notice of nonrenewal of a fixed term lease, tenants' protected activity must precede the notice of nonrenewal and expiration of the lease term. Limiting the availability of the defense to cases where tenants' protected activity occurs during the lease term protects landlords from "the need to litigate the tenant's intent to frustrate a nonretaliatory termination by engaging in protected activities subsequent to receipt of the notice of eviction or termination." *Voyager Village Ltd. v. Williams*, 444 N.E.2d 1337, 1346 (Ohio Ct. App. 1982) (where notice of termination of tenancy precedes the tenant's engaging in protected activities, retaliatory eviction defense is unavailable).

### B. Application of the retaliatory eviction defense

Tenants contend that in allocating the burden of proof, the trial court failed to follow the Court's direction in *Gokey v. Bessette*, 154 Vt. 560, 580 A.2d 488 (1990). In *Gokey*, we held that the retaliatory eviction statute, 9 V.S.A. § 4465(a)(2), did not contemplate use of a subjective test for evaluating what is retaliatory conduct. *Id.* at 564, 580 A.2d at 491. We reasoned "[a] subjective test would effectively establish such a high burden of proof for tenants that the benefit the Legislature intended to confer would be an illusion." *Id.* Contrary to tenants' claim here, *Gokey* did not relieve tenants of their burden to prove a retaliatory eviction. Instead, it relieved tenants of the

obligation to establish retaliation by proving landlords' subjective intent. *Gokey* imposed an objective test for evaluating "what is and is not retaliatory." Under this test, tenants can rely on the surrounding facts and circumstances to fulfill their burden of proving retaliatory eviction. *Id.*

 Nevertheless, tenants argue that the court's conclusion that retaliatory eviction "is a statutory defense," and therefore, "it is the defendants' burden to prove the defense," is erroneous. Retaliatory eviction can be raised as a separate cause of action entitling tenants to damages and attorney's fees or as a defense. 9 V.S.A. § 4465(b). In the present action, tenants raised retaliatory eviction as an affirmative defense. As the party asserting the affirmative defense, tenants have the burden of proving that defense. See V.R.C.P. 8(c); *Western Land Office, Inc. v. Cervantes*, 220 Cal. Rptr. 784, 789 (Ct. App. 1985) (the tenant claiming the landlord is guilty of wrongdoing has burden of proving retaliatory eviction).

Tenants rely on cases from other jurisdictions as support for their argument that landlords have the burden to disprove the retaliation claim or produce evidence of another legitimate, nonretaliatory motive. The cases relied on by tenants, however, interpret statutes and ordinances that codify a presumption of retaliation once a notice to vacate or quit follows a tenant complaint. See, e.g., *Youssef v. United Management Co.*, 683 A.2d 152, 154 (D.C. 1996) (statute imposes burden on landlord to come forward with clear and convincing evidence to rebut the presumption of retaliatory action); *Hillview Assocs. v. Bloomquist*, 440 N.W.2d 867, 871 (Iowa 1989) (in an action by or against the tenant, evidence of a complaint within six months prior to the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation); *Perreault v. Parker*, 490 A.2d 203, 205 (Me. 1985) (a presumption of retaliation by the landlord arises if within six months prior to the commencement of the action the tenant has made a good faith complaint of conditions affecting health and safety of apartment, and no writ of possession may issue in the absence of rebuttal of the presumption of retaliation); *Barnes v. Weis Management Co.*, 347 N.W.2d 519, 521 (Minn. Ct. App. 1984) (statute imposes burden of proving nonretaliatory purpose on landlord if notice to quit was served within ninety days of the date of any act of the tenant to secure or enforce contract or statutory rights or good faith reporting to a governmental authority); *Parkin v. Fitzgerald*, 240 N.W.2d 828, 831

(Minn. 1976) (applying Minnesota statute); *Fromet Properties, Inc. v. Buel*, 684 A.2d 83, 90-91 (N.J. Super. Ct. App. Div. 1996) (statute creates a presumption of a retaliatory motive under certain circumstances); *Cornell v. Dimmick*, 342 N.Y.S.2d 275, 279 (City Ct. 1973) (holding city ordinance states that receipt of notice to quit a dwelling creates a rebuttable presumption that such notice is a reprisal against the tenant for making a complaint to city officials about code violation); *Karas v. Floyd*, 440 N.E.2d 563, 566 (Ohio Ct. App. 1981) (statute shifts burden to landlord once the tenant has shown that the landlord's decision to evict was in response to the tenant's complaints regarding housing code violations).

Tenants urge this Court to read into Vermont's retaliatory eviction statute a presumption of retaliation or some other burden shifting provision. The legislative history of the statute, however, does not support their contention. The first draft of the legislation establishing the rights, obligations and remedies of landlords and tenants under residential agreements, now contained in Title 9, chapter 137, included such a presumption. As originally drafted in 1985, House Bill 339, the source legislation of the current statute, contained the following provision in subsection (b):

> In an action by or against the tenant, evidence of an act listed in subsection (a) [containing protections identical to those found currently in 9 V.S.A. § 4465(a)((1)-(3)] of this section within three months before the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation unless and until credible evidence is introduced which would support a finding of legitimate purpose for the action. Such evidence includes but is not limited to inflation, increases in municipal taxes, fees and assessments, utilities, fuel and costs of amortizing improvements. The presumption does not arise if the tenant made the complaint after notice of a proposed rent increase or diminution of services.[2]

1985, H. 339 (Vt. Bien. Sess.). This provision was deleted by the House Judiciary Committee before it was passed to the Senate for consideration. House Cal. 275-87 (Feb. 26, 1986, Vt. Adj. Sess.); Sen.

---

[2] The bill was introduced in the House on March 1, 1985. House Jour. 202 (March 1, 1985, Vt. Bien. Sess.). On February 26, 1986, Representative Batten of Hardwick recommended that the bill be amended by striking all text after the enacting clause and replacing it with a draft that more closely resembles the current statute, omitting the rebuttable presumption language. House Cal. 275 (February 26, 1986, Vt. Adj. Sess.).

Jour. 569 (April 22, 1986, Vt. Adj. Sess.). The presumption of retaliation provision was not revived in the version of H. 339 finally enacted by the General Assembly. 1985, No. 175 (Adj. Sess.), § 1.

■ The Legislature's deliberate omission of a retaliatory presumption evinces its rejection of altering the burden of proof for the affirmative defense of retaliatory eviction in 9 V.S.A. § 4465. See *State v. Cattanach*, 129 Vt. 57, 60, 271 A.2d 828, 829-30 (1970). We refuse to insert into the statute a presumption expressly rejected by the Legislature. See *Shea v. Pilette*, 108 Vt. 446, 450, 189 A. 154, 156 (1937) (the courts are not at liberty to supply that which the lawmakers have advertently omitted) (quotations omitted). See also *Western Land Office*, 220 Cal. Rptr. at 789-90. (By specifically discarding a rebuttable presumption in favor of the tenant, the legislature left on the tenant the burden of proving retaliatory eviction by a preponderance of the evidence.).

Accordingly, we hold that the court correctly assigned to tenants the burden of proving their affirmative defense of retaliatory eviction.

## III. Finding of no retaliation

Finally, tenants contend that the court's finding that the notice of nonrenewal was not retaliatory was clearly erroneous. We will affirm the trial court's finding of fact "unless, viewing the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, a finding is clearly erroneous." *Semprebon v. Semprebon*, 157 Vt. 209, 214, 596 A.2d 361, 363 (1991). Tenants insist that the record supports only one finding: that landlords acted with retaliatory intent in serving tenants a notice of nonrenewal in September 1999. In support of their claim, tenants repeatedly prevail on the Court to review the landlords' actions surrounding the notice to vacate during the lease term in April 1999. Tenants argue that because the court found that landlords had a retaliatory motive in March and April 1999, they necessarily had that motive almost six months later in late September 1999, when landlords served their notice of nonrenewal.

■ The court properly considered all the facts and circumstances surrounding the interactions between the parties and found no retaliation for the nonrenewal. See *Gokey*, 154 Vt. at 564, 580 A.2d at 491 (resolution of the defendant's retaliatory eviction defense

requires an evaluation of all the facts and circumstances between the parties). The court considered landlords' actions after the April 1999 notice to vacate in determining whether landlords maintained a retaliatory motive. Important to the trial court was the fact that landlords had completed most of the repairs of which tenants complained. Indeed, landlords removed the one problem affecting health and safety — the debris on the landing/fire escape. Landlords also repaired the windows and showers. Courts that impose the burden on landlords to rebut a retaliatory presumption have held that once repairs are made, the retaliatory eviction defense is removed. See, e.g., *Robinson v. Diamond Housing Corp.*, 463 F.2d 853, 865 (D.C. Cir. 1972) (a landlord can rebut retaliatory intent by evidence it has brought premises up to housing code and seeks to evict for some other lawful reason); *Cornell v. Dimmick*, 342 N.Y.S.2d at 279 (once heating system is put in good working condition, the defense of retaliatory eviction will no longer be available to the tenant).

The court also noted that despite tenants' initial threat to withhold rent, they had not done so and landlords had abandoned their attempt to evict tenants during the lease term. Absent a showing that these findings were not supported by credible evidence or that the trial court abused its discretion, the findings must stand. *Gokey*, 154 Vt. at 564, 580 A.2d at 491. Although tenants argue strenuously that evidence which led the trial court to conclude that landlords had a retaliatory motive in initiating the original eviction action should have also led the court to conclude that the motivation never changed, the court was not persuaded. Determination regarding the persuasive effect of evidence is for the trial court, and will stand if supported by credible evidence. *Gallagher v. McCarthy*, 148 Vt. 258, 263, 532 A.2d 557, 559-60 (1987).

*Affirmed.*

**Johnson, J.,** concurring and dissenting. I agree with the Court's holding in every respect except for the last issue, which decides the case against the tenants and upholds their ultimate eviction from Section 8 housing. I agree with the tenants that, on the face of the record and the facts as found by the trial court, the conclusion was inescapable that the landlords sought eviction in retaliation for complaints filed by the tenants. Therefore, I respectfully dissent from part III of the Court's opinion.

Closing arguments reveal that, because the landlords amended the complaint on the day of trial to a claim for nonrenewal of the lease, the tenants had to fight to keep the issue of retaliatory eviction in the case. The trial court was not convinced that the defense should be allowed on the nonrenewal ground. Rather than face the legal issue, however, the trial court accepted the defense in theory and simply concluded it had not been proved. As a consequence, the trial court gave short shrift to this issue. It found that there was a retaliatory motive on April 1, 1999, when the first notice to quit was issued, but that the "evidence does not support a finding that as of September 24, 1999 [second notice to quit], the motive of the plaintiff was a retaliatory one. At this time many of the repairs had been completed . . . [a]nd three days later the plaintiffs waived their opportunity for a trial to proceed with their eviction case."

As we have found in the majority opinion, a defense of retaliatory eviction is a question of fact in every case, and our standard of review is deferential on the trial court's findings of fact; nevertheless, the conclusion must follow from the facts as found. *Begins v. Begins*, 168 Vt. 298, 303, 721 A.2d 469, 471 (1998); *Bisson v. Ward*, 160 Vt. 343, 350-51, 628 A.2d 1256, 1261 (1993).

In judging motive in a retaliatory eviction case, the inquiry is an objective one. As we stated in *Gokey v. Bessette*, 154 Vt. 560, 564, 580 A.2d 488, 491 (1990), "[w]hile animus or bad motive may properly be considered in evaluating what is 'retaliatory,' the statute does not contemplate use of a subjective test. A subjective test would effectively establish such a high burden of proof for tenants that the benefit the Legislature intended to confer would be an illusion. In determining what is and is not retaliatory, the events must speak for themselves." Under an objective view of the facts, the trial court's conclusion that the eviction was not retaliatory does not withstand analysis.

The court's apparent theory was that while the requests for repairs were outstanding, the landlords thought they could avoid the repairs by evicting the tenants. When that did not work, and the City of Barre got involved, the landlords made the repairs. Despite its finding that the original notice to quit was retaliatory, the court had to conclude that the retaliatory motive vanished after the landlords were forced to spend money on the apartment. The making of repairs does not provide any support for the conclusion that the landlords no longer had a motive to retaliate. In the absence of other evidence, the

contrary is true because the landlords have suffered a detriment, and the successful action by these tenants could very well encourage others to complain about conditions. Landlords had every reason to evict for an improper purpose and advanced no reasons other than expiration of the lease, to meet tenants' claim of retaliation.

Nor does the fact that the landlords gave up a trial date for the eviction support the court's conclusion. As outlined by the majority, this eviction action began in May 1999. The tenants raised affirmative defenses, including retaliation. Trial was set for July 7, 1999, but was continued for reasons of discovery and because the landlords had recently retained counsel. Trial was rescheduled for October 8, 1999. On September 24, 1999 the landlords changed the *ground* of the eviction by issuing a notice to quit based on nonrenewal of the lease on October 31, 1999. The case was continued on September 27, 1999 by agreement of the parties because the hope was that the tenants would leave at the expiration of the lease. The tenants did not leave and the matter came to trial on December 15, 1999. At that time, the court granted the landlords' motion to amend their complaint to seek possession on the ground of nonrenewal. In other words, the parties proceeded on the same eviction action, but the grounds were amended on the day of trial. If anything, the procedural history of the case showed the steadfastness with which the landlords wanted the tenants out. It strains credulity to conclude that their motive changed between April and September. The only thing that changed was that the landlords hired counsel, who changed the legal ground of the complaint.

Moreover, the change of motive defense was raised by the trial court, not the landlords. Their position throughout was that their motive for the eviction was irrelevant because the lease had expired and tenants were barred from raising retaliatory eviction as a defense. Not surprisingly, the landlords offered no evidence to rebut the case. Although it was the tenants' burden to prove retaliation, they more than made out their prima facie case by the objective facts surrounding the first notice to quit and the subsequent disagreements over repairs. The trial court agreed that the first notice to quit was retaliatory. No other evidence — the fact that repairs were made and the trial date continued — undercut the tenants' case. To the extent the court's determination that the landlord had no retaliatory motive on September 24th is a finding of fact, it is unsupported by the evidence and clearly erroneous.

Therefore, because the landlords raised no defense to the retaliation, judgment should have been entered for the tenants.

It is distressing that the tenants have won the battle, but lost the war, and lost their Section 8 housing because they complained, contrary to the protection of the statute (9 V.S.A. § 4465) that we have just affirmed. I would reverse and enter judgment for the tenants.

I respectfully dissent. I am authorized to state that Justice Dooley joins in this dissent.