Northgate Housing Limited v. White, No. S1046-03 CnC  (Norton, J., Nov. 19, 2004)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                          SUPERIOR COURT
Chittenden County, ss.:                              Docket No. S1046-03 CnC

NORTHGATE HOUSING LIMITED

v.

CHRISTA WHITE AND PETER WHITE

v.

NORTHGATE RESIDENTS ASSOCIATION, INC.

ENTRY

This case concerns an eviction proceeding against Christa and Peter White, tenants in Northgate Apartments in Burlington. The Whites' landlord, Northgate Housing Limited Partnership, initiated this proceeding allegedly because Christa White refused to sign an amendment to her lease agreement. The Whites have counterclaimed that the eviction was retaliatory, in violation of 9 V.S.A. § 4465, and that Northgate Housing has violated their federal rights. The Whites have also filed a third-party complaint against Northgate Residents Association, Inc., the tenant organization for the Northgate apartment complex. The Whites allege that Northgate Residents violated several federal rights and acted ultra vires. In their counterclaim and third-party complaint, the Whites seek declaratory and injunctive relief, as well as a dismissal of Northgate Housing's complaint.

Northgate Residents brings a motion for judgment on the pleadings pursuant to

V.R.C.P. 12(c), arguing that the Whites have no right of action by which they can assert that Northgate Residents violated their federal rights and that the Whites' ultra vires claim is moot. Northgate Housing brings a motion for summary judgment, also arguing that the Whites lack a right of action by which to assert that Northgate Housing violated their federal rights. Northgate Housing also argues that the Whites cannot prove that the eviction action was retaliatory, given that Christa White ultimately signed the lease amendment.

The Whites agree that they no longer have a claim for ultra vires. Therefore, the court dismisses this claim by stipulation of the parties. The court also dismisses the Whites' third-party complaint against Northgate Residents because the Whites have no right of action, as discussed below. For the same reason, the court grants Northgate Housing's summary judgment motion with regard to the counterclaims regarding violations of the Whites' federal rights. Finally, the court denies Northgate Housing's summary judgment motion with regard to the retaliatory eviction counterclaim, because the Whites have provided adequate evidence to demonstrate a dispute as to material facts.

The facts are largely undisputed. Where there are disputes, the court gives the Whites, as the nonmoving party, all benefits of reasonable doubt.

Northgate Apartments is subject to U.S. Department of Housing and Urban Development regulations. This dispute began when Christa White refused to sign a lease amendment that gave Northgate Housing the right to terminate a lease should a resident engage in certain criminal activity in or around the apartment complex. Ms. White believed that the amendment was not properly adopted by Northgate Residents. In the winter and spring of 2003, Northgate Housing sent several notices to Ms. White that she was in violation of her lease by not signing the amendment.

Ms. White had been active in organizing tenants to bring complaints before Northgate Housing. She was active with the Concerned Residents of Northgate, Inc., which had complained to the U.S. Department of Housing and Urban Development that Northgate Residents was not properly independent from the property managers. Shortly before Northgate Housing began eviction proceedings, she was elected to the Northgate Residents Board of Directors.

Northgate Residents's Board membership policy provides that each member must

be a tenant in good standing and in compliance with all the terms of the Northgate Housing lease. After Northgate Housing began its eviction proceeding against Ms. White, the Northgate Residents Board determined that she was not a tenant in good standing and voted to remove her from the Board.

The Whites' counterclaim argues that Northgate Housing brought the eviction claim to retaliate against her for joining the Board in the first place. In support of this argument, the Whites point to surrounding circumstances of the eviction and to specific statements in a deposition of a former Northgate Residents employee. In essence, this employee testified that Northgate Housing was furious that Ms. White had been elected to the Board and used the eviction action as a means to get her off the Board.

The Whites also argue that Northgate Residents has violated several of Ms. White's federal rights, including her rights under HUD tenant organization regulations and her First Amendment right to free speech.

The court first addresses the Whites' arguments with regard to federal rights before turning to the retaliatory eviction counterclaim.

Northgate Housing and Northgate Residents both argue that the Whites do not have a cause of action under HUD statutes and regulations. Because HUD statutes do not expressly confer a right of action, the Whites can bring their HUD-related claims only through an implied right of action. In addressing implied rights of action, the Supreme Court of the United States has drifted away from its mechanical, four-factor approach in Cort v. Ash, 422 U.S. 66 (1975), to an approach whereby the primary goal is to determine whether Congress intended to create a private right of action. As the Court stated in Alexander v. Sandoval, 532 U.S. 275 (2001):

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

Id. at 286–87 (citations omitted).

3

In determining whether a statute confers an implied right of action, the <u>Sandoval</u> Court ascertained the individuals whom the statute addressed directly. According to this approach, if the statutory text focuses on a class of beneficiaries, then the statute contains rights-creating language that indicates a congressional intent to create a private right of action for members of that class. If, however, the text focuses on individuals being regulated or an agency enacting the regulation, an implied right of action is unlikely for those who benefit from the regulations. See <u>Sandoval</u>, 532 U.S. at 288–89.

Also, the Court in <u>Sandoval</u> held that regulations alone cannot confer implied rights of action. Rather, the right of action must be implied by an agency's governing statute. Therefore, no matter how many protections a regulatory scheme appears to confer, these protections do not provide an implied right of action without statutory provisions to specifically support them. See <u>id</u>. at 291.

Here, the tenant organization regulations that the Whites cite are authorized by two statutory provisions: 12 U.S.C. § 1715z–1b and 42 U.S.C. § 3535(d). See Tenant Participation in Multifamily Housing Projects, 61 Fed. Reg. 57,960, 57,961 (1996) (final rule) (citing rulemaking authority). Section 3535(d) merely provides broad rulemaking authority for the HUD Secretary and does not confer any actual rights or remedies. Section 1715z–1b contains a statement of purpose, § 1715z–1b(a); general rights of tenants, § 1715z–1b(b); and rulemaking authority, § 1715z–1b(c). In its entirety, § 1715z–1b(b), the most likely source of an implied right of action, states:

> (b) Rights of tenants
>
> The Secretary shall assure that--
>
>> (1) where the Secretary's written approval is required with respect to an owner's request for rent increase, conversion of residential rental units to any other use (including commercial use or use as a unit in any condominium or cooperative project), partial release of security, or major physical alterations or where the Secretary proposes to sell a mortgage secured by a multifamily housing project, tenants have adequate notice of, reasonable access to relevant information about, and an opportunity to comment on such actions (and in the case of a project owned by the

4

Secretary, any proposed disposition of the project) and that such comments are taken into consideration by the Secretary;

(2) project owners not interfere with the efforts of tenants to obtain rent subsidies or other public assistance;

(3) leases approved by the Secretary provide that tenants may not be evicted without good cause or without adequate notice of the reasons therefor and do not contain unreasonable terms and conditions; and

(4) project owners do not impede the reasonable efforts of resident tenant organizations to represent their members or the reasonable efforts of tenants to organize.

Although the "Rights of Tenants" heading may be rights-creating language, the entire subsection directs the HUD Secretary to regulate project owners (i.e., landlords receiving HUD assistance), not tenants. Thus, the statute focuses on those regulated and on the regulating agency, rather than the class of beneficiaries. Under the Sandoval Court's analysis, this section does not confer an implied right of action. See Banks v. Dallas Hous. Auth., 271 F.3d 605, 611 (5th Cir. 2001) (applying Sandoval to similar HUD statute). And because the statute does not confer an implied right of action, regulations enacted under the statute's authority cannot confer implied rights of action either.

The statement of purpose, 12 U.S.C. § 1715z–1b(a), also fails to demonstrate an implied right of action.[1] The broad purpose it conveys does not expressly identify tenants as the sole beneficiaries. Rather, the section merely notes the "importance and benefits" of tenant organizations. Tenant organizations may be just as important and beneficial to landlords as they are to tenants. Furthermore, the Supreme Court has not generally relied

---

[1]

The purpose of this section is to recognize the importance and benefits of cooperation and participation of tenants in creating a suitable living environment in multifamily housing projects and in contributing to the successful operation of such projects, including their good physical condition, proper maintenance, security, energy efficiency, and control of operating costs.

12 U.S.C. § 1715z–1b(a).

on broad statements of policy and practice to determine that a statute confers a right. See, e.g., Gonzaga Univ. v. Doe, 536 U.S. 273, 288 (2002).

In sum, without a right of action, the Whites' attempt to privately enforce HUD regulations in this case is unavailing.

This court also rejects the Whites' claim that Northgate Housing and Northgate Residents have violated their First Amendment right to free speech. The First Amendment prevents only governments from abridging free speech rights; it does not prevent private individuals or private entities from doing so. See 16A Am. Jur. 2d Constitutional Law § 408 (1998). Neither Northgate Housing or Northgate Residents is an arm of the state. Hence, the Whites' First Amendment claim has no merit.

Finally, the Whites claim they have a right of action to enforce the Supremacy Clause, arguing that actions of Northgate Housing or Northgate Residents contravene federal law, which is the "supreme Law of the Land." U.S. Const. art. VI.  Although federal courts have recognized a Supremacy Clause right of action, it applies only in cases where state or municipal laws, regulations, or ordinances contravene federal law. See Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1263–64 (10th Cir. 2004). Again, at issue in the instant case are actions and policies of private entities, not arms of the state. Thus, the Supremacy Clause does not provide the Whites with a right of action, either.

With respect to the retaliatory eviction counterclaim, Northgate Housing argues that the Whites have not met their burden and that the counterclaim should be dismissed by summary judgment. Section 4465 of Title 9 of the Vermont Statutes Annotated prohibits a landlord from retaliating "by establishing or changing terms of a rental agreement or by bringing or threatening to bring an action against a tenant who . . . has organized or become a member of a tenant's union or similar organization." Because this is a counterclaim, the Whites have the burden of proof, but they need only provide objective evidence that Northgate Housing's actions were retaliatory. Houle v. Quenneville, 173 Vt. 80, 90–91 (2001). "[T]enants can rely on the surrounding facts and circumstances to fulfill their burden of proving retaliatory eviction." Id.

Here, the Whites have met their burden of proof to defeat a summary judgment motion. The Whites were longtime resident organizers at Northgate, having helped form "Concerned Residents of Northgate." The Whites point to several excerpts from

deposition testimony which indicate that Northgate Housing was concerned about the Whites being elected to the Northgate Residents Board. As a former Northgate Residents employee testified, Northgate Housing "wanted them to be taken off the board" and directed Northgate Residents employees to "find a way to either have them in violation of their lease or find some other clause that prohibited them from being allowed to be on the [Northgate Residents] board." This same former employee testified that Northgate Housing later discovered that an eviction action would force the Whites off the Northgate Residents Board, and that such an action was Northgate Housing's "out" or excuse through which it could accomplish this goal.

There is contrary evidence that the property manager had decided to begin eviction proceedings before the Whites were elected to the Northgate Residents Board. This evidence would indicate that the eviction had nothing to do with the White's membership to the board. But in a summary judgment motion, the court must give the nonmoving party the benefit of all reasonable doubts. Carr v. Peerless Ins. Co., 168 Vt. 465, 476 (1998). Hence, the testimony of the former Northgate Residents employee weighs in favor of denying Northgate Housing's motion.

Although the Whites' third-party complaint does not expressly raise a retaliatory claim against Northgate Residents, the parties suggest that Northgate Residents may be subject to injunctive or declaratory relief to ensure that Northgate Housing does not use Northgate Residents to retaliate against the Whites. Thus, as the parties suggest, there may be a derivative retaliatory claim against Northgate Residents. Such a claim lacks merit here. The Whites' retaliatory claim against Northgate Housing essentially posits that Northgate Housing brought its eviction claim because the Whites engaged in organizing residents, especially by being elected to the Northgate Residents board. Thus, the eviction was retaliatory. Northgate Residents was not in a position to evict the Whites because it was not the landlord in this case and the parties have not represented that Northgate Residents had the power to evict any residents. Therefore, the retaliatory claim against Northgate Residents has no merit and is dismissed.

In summation, the Whites have no right of action to bring any of their claims regarding a violation of rights imbedded in HUD regulations. Hence, Northgate Residents motion to dismiss and Northgate Housing's motion for summary judgment are granted with respect to these claims. The Whites also have no meritorious claim that Northgate

Residents was retaliating through the eviction proceeding because Northgate Residents was not in a position to evict the Whites. And because the court has dismissed the ultra vires claim, all claims against Northgate Residents have been dismissed. The court therefore dismisses the Whites' third-party complaint. With regard to the Whites' counterclaim for retaliatory eviction against Northgate Housing, the court denies Northgate Housing's summary judgment motion.

ORDER

Northgate Resident's motion to dismiss is GRANTED. Northgate Housing's motion for summary judgment is GRANTED in part and DENIED in part, consistent with the above entry.

Dated at Burlington, Vermont, November 19, 2004.

_____/s/_____
Judge