*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-271

MAY TERM, 2012

| | | |
|---|---|---|
| Martin Webster | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windham Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Steve Anderson | } | DOCKET NO. 501-9-10 Wmcv |

Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Tenant appeals the superior court's June 28, 2011 decision rejecting his counterclaims in this eviction action. We affirm.

In 2007, tenant began renting an apartment in a house owned by landlord. There was no written lease, but rent was set at $850 per month to be paid at the beginning of each month, and tenant was required to pay landlord $1700 at the commencement of the tenancy. Sometime in March 2010, tenant informed landlord that he intended to vacate the apartment by the end of the following month because he was looking for a job outside of the area. Tenant asked if landlord would allow him to pay rent in bi-weekly installments and apply the last month's rent he had given landlord at the beginning of the tenancy. Landlord agreed to do so, but stated to tenant that the extra money provided at the beginning of the tenancy was in fact a security deposit. Apparently, the parties disagreed on this point. Tenant remained in the apartment beyond the end of April. He continued to make bi-weekly payments without replenishing what landlord believed to be his security deposit.

On July 29, 2010, landlord delivered a letter to tenant stating that, effective September 1 of that year, the rent would increase from $850 to $950 and tenant would be required to reestablish a security deposit and pay the entire rent on the first of each month. Landlord also stated that, because of the dispute over the security deposit, he would require the execution of a written lease as of October 1, 2010. On August 25, 2010, landlord asked tenant whether he planned to respond to the letter. Tenant replied by informing landlord that he had consulted an attorney and that the apartment required $10,000-$15,000 in unattended repair work. Concerned that tenant was making false accusations as to the condition of the apartment in response to legitimate issues raised in his July 29 letter, landlord consulted an attorney for advice on terminating the tenancy.

On September 1, 2010, tenant sent landlord a letter stating, among other things, that he intended to pay his rent bi-weekly in escrow to be held by his attorney "until the issues I have identified can be addressed." Tenant was apparently referring to a later paragraph in the letter entitled "Code Questions," wherein he states: "Over the past 30 days—as the result of your letter—I have done some research and have found reasons to question whether [your previous

assurances that the apartment complied with code requirements] is fully accurate." Tenant stated that he wanted landlord to confirm in a written letter to tenant's attorney landlord's previous assurances as to the apartment meeting code requirements. Tenant stated that when that was done—in particular with respect to the front and back stairways—he would then consult his attorney about releasing the rent payments from escrow.

The following day, September 2, 2010, landlord delivered to tenant a notice of termination of tenancy. The letter stated that the tenancy would be terminated as of September 18, 2010 if tenant did not pay landlord the overdue rent by that date and that, in any case, the oral month-to-month lease would be terminated in sixty days as of November 4, 2010. On the same day, landlord sent tenant another letter stating that he wanted to arrange a time to inspect the apartment due to tenant's claims of needed repairs and code violations. Landlord proposed inspecting the apartment on September 7, but tenant sought a delay so that he could consult with his attorney. After agreeing to tenant's request for a delay, landlord sent tenant another letter stating his intent to inspect the apartment on September 11, 2010 at 11:00 in the morning. Tenant sought a further delay, but landlord refused and arrived with a third party at the appointed time. Tenant was at the apartment but refused to consent to landlord's entry. Landlord nonetheless entered the apartment with his key and inspected the property.

In late September, landlord filed an eviction action against tenant. In response, tenant raised several affirmative defenses and counterclaims sounding in retaliatory eviction, unlawful trespass, and invasion of privacy. At a rent escrow hearing, tenant stipulated to relinquishing possession of the apartment by November 30, 2010. By the time the trial court rendered its decision on tenant's counterclaims, landlord had acknowledged that no rent was due, which was his only claim for damages.

In its June 28, 2011 decision, the court rejected tenant's counterclaims, ruling that none of them were supported by the evidence or the law. Regarding the claim of retaliatory eviction, the court ruled that tenant had failed to meet his burden of proving that landlord's decision to terminate his tenancy was in retaliation for tenant having raised concerns over code violations. See Houle v. Quenneville, 173 Vt. 80, 93 (2001) (holding that tenants have burden of proving affirmative defense of retaliatory eviction). Tenant contends that the court erred by relying on landlord's proffered subjective reasons for his actions rather than the objective fact that he sent tenant a termination notice one day after tenant had sent him a letter mentioning possible code violations. We find no error. To be sure, "we held [in Gokey v. Bessette, 154 Vt. 560 (1990)] that the retaliatory eviction statute, 9 V.S.A. § 4465(a)(2), did not contemplate use of a subjective test for evaluating what is retaliatory conduct." Id. at 90. But "Gokey did not relieve tenants of their burden to prove a retaliatory eviction." Id. Rather, Gokey imposed an "objective test" relying upon "surrounding facts and circumstances." Id. at 91.

That is precisely what the trial court relied upon in this instance before concluding that tenant had failed to prove his retaliatory eviction claim. In isolation, the principal fact that tenant relies upon—the fact that landlord sent him an eviction letter one day after he had sent landlord a letter suggesting potential code violations—appears to support his retaliatory eviction claim. But when all of the objective facts and circumstances are considered, the claim does not hold up. As the trial court pointed out, landlord's July 29 letter expressed a need to clarify the terms of the tenancy in light of the disagreement over whether the extra money tenant supplied upon commencing the tenancy was a security deposit and whether tenant needed to replenish that deposit and resume full monthly payments at the beginning of each month. The changes demanded by landlord in the July 29 letter were to commence with tenant's September 1 monthly payment. Thus, the timing of landlord's September 2 notice-of-termination letter made

perfect sense absent any retaliatory motive, given tenant's failure on September 1 to abide by the terms set forth by landlord in the July 29 letter. This is particularly true in light of the August 25 confrontation in which tenant informed landlord—falsely as the trial court found—that the apartment required thousands of dollars in repairs. Although tenant interposed his September 1 letter vaguely suggesting possible code violations the day before he received landlord's notice-of-termination letter, the objective facts and circumstances, as found by the court, strongly undercut tenant's claim of retaliation. See id. at 93 (stating that trial court's findings of fact will be upheld unless they are clearly erroneous after viewing evidence in light most favorable to prevailing party and excluding effect of modifying evidence).

Tenant also argues that the trial court erred by rejecting his claims of trespass and invasion of privacy, focusing primarily on his contention that there was no emergency or exigent circumstances justifying the unwanted inspection of the apartment. We find no merit to this argument. No emergency was required for entry because of the notice of inspection provided by landlord. See 9 V.S.A. § 4460(c) (providing that landlord may enter dwelling unit "without consent or notice" only when landlord has reasonable belief of imminent danger to person or property). The record amply supports the trial court's conclusions that landlord fulfilled the statutory requirements for access to the apartment he owns and that landlord was legally entitled to peacefully effectuate that access when tenant unreasonably withheld his consent for entry in violation of his statutory duty. See 9 V.S.A. § 4460(a)-(b) (providing that landlord may enter dwelling unit "with the tenant's consent, which shall not be unreasonably withheld," and that landlord may enter dwelling unit between nine in the morning and nine at night on no less than 48 hour's notice, in relevant part, "when necessary to inspect the premises"). The record further supports the trial court's conclusion that landlord's videotaped inspection was reasonable and necessary in light of tenant's contentions regarding code violations and the need for repairs.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

3